IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

────────────────────────────────────

DAVID McCHESNEY,

                         Plaintiff,
                                                    Civil Action No.
          vs.                                       9:08-CV-1186 (NAM/DEP)

MICHAEL F. HOGAN, Commissioner,
New York State Office of Mental Health, *et al.*,

                         Defendants.

──────────────────────────────────

DAVID McCHESNEY,

                         Plaintiff,
                                                    Civil Action No.
          vs.                                       6:08-CV-1290 (DNH/DEP)

MICHAEL F. HOGAN, Commissioner,
New York State Office of Mental Health, *et al.*,

                         Defendants.

──────────────────────────────────

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

DAVID McCHESNEY, *Pro Se*
25527-604
CNY Psychiatric Center
P.O. Box 300
Marcy, New York 13403

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT, RECOMMENDATION AND ORDER

At the clerk's request, I have reviewed the two above-captioned

actions recently filed by David McChesney, a present or former New York

State prison inmate who is currently designated to the Central New York

Psychiatric Center (the "CNYPC"), located in Marcy, New York, and within

this district.[1,2]  During the course of my review of those actions I have also

considered plaintiff's requests for permission to proceed *in forma pauperis*

("IFP") and for the issuance of a preliminary injunction in these two

matters.  Additionally, I have addressed whether these actions are

---

[1]   Although plaintiff's status is somewhat unclear, it appears from information publically available on the New York State Department of Correctional Services website that the plaintiff was released into the custody of "another agency", presumably the New York State Office of Mental Health ("OMH"), on April 6, 2007. It therefore appears that plaintiff has been civilly committed involuntary pursuant to the provisions of New York Mental Hygiene Law Art. 10, as a sex offender determined to require civil management following the culmination of his prison sentence.  For a description of the contours of N.Y. Mental Hygiene Law Art. 10, enacted in relevant part in March of 2007 as the Sex Offender Management and Treatment Act, *see generally Mental Hygiene Legal Service v. Spitzer,* No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007).

[2]   Plaintiff currently has two other actions pending in this court, including *McChesney v. Hogan, et al.*, No. 9:08-CV-0163 (FJS) (filed Feb. 11, 2008) and *McChesney v. Hogan, et al.,* No. 9:08-CV-0563 (NAM) (filed June 10, 2008).  A fifth action commenced by the plaintiff *McChesney v. Miller, et al.*, No. 9:08-CV-0195 (TJM) (filed Feb. 21, 2008), was closed in March of 2008 based upon plaintiff's voluntary withdrawal of claims set forth in his complaint, without prejudice.  *See id.*, Dkt. Nos. 4-6.

appropriately designated as prisoner civil rights actions for purposes of

Northern District of New York General Order No. 12, to be assigned a

division nine code, and whether the two cases should be consolidated.

I.      BACKGROUND

Plaintiff's complaint in the first of these two pending actions, filed on

November 6, 2008, names Dr. Michael F. Hogan, the Commissioner of the

OMH, and CNYPC Dr. Donald Sawyer as defendants, and asserts that the

sex offender treatment program to which he has been exposed at the

Center subjects him, as an atheist, to various religious rituals and

practices which violate his free exercise rights under the First Amendment

to the United States Constitution, and additionally that the use of

polygraph and plethysmograph[3] examinations in connection with that

treatment violates his right against self-incrimination under the Fifth

Amendment to the United States Constitution.  That action has been

designated as a division nine case for case assignment purposes.

Plaintiff's applications for IFP status and for a temporary restraining order

are currently pending before the court in connection with that action.

---

[3]    A plethysmograph is "[a]n instrument that measures variations in the size of an organ or body part on the basis of the amount of blood passing through or present in the [body] part." American Heritage Dictionary 1338 (4th ed. 2000).

The most recent action commenced by the plaintiff, *McChesney v. Hogan, et al.*, No. 6:08-CV-1290 (DNH/DEP), names Commissioner Hogan, Executive Director Sawyer, and three additional members of the treatment team at the CNYPC as defendants and asserts that the sex offender treatment program utilized at the Center, and in particular the portion requiring that the plaintiff compile an autobiography chronicling his history, violates his Fifth and Fourteenth Amendment rights against self-incrimination.  Currently pending in that action are applications by the plaintiff for leave to proceed IFP and for preliminary injunctive relief. Plaintiff's complaint in that action has been designated as a division six, non-prisoner matter pursuant to Northern District of New York General Order No. 12.

II.    DISCUSSION

  A.    Division Designation

As the foregoing reflects, the first of these two actions, as well as 08-CV-0163 (FJS) and 08-CV-0563 (NAM), have received division nine designations, while the fourth has been assigned as a division six case. Under Northern District of New York General Order No. 12, prisoner civil rights actions involving challenges to conditions of confinement are

4

typically considered as division nine matters.  This designation is

significant, in that such cases are assigned to district judges and

magistrate judges throughout the district generally pursuant to a formula

that has been adopted by the district's board of judges, without regard to

where within the district the matter arises or the location of the facility at

which the events at issue are alleged to have occurred.  Division nine

cases are tracked by the paralegals within the district's inmate litigation

unit, and scheduling orders issued in such matters pursuant to Rule 16 of

the Federal Rules of Civil Procedure are specifically tailored to inmate

litigation, unlike the more traditional, uniform pretrial scheduling orders

applicable to civil cases generally.

　　　While the plaintiff in these four cases is not a prisoner in the

traditional sense, his circumstances are closely akin to those experienced

by a prisoner within the jurisdiction of the Federal Bureau of Prisons, the

New York State Department of Correctional Services, or local county

agencies.  Moreover, in the court's view these cases lend themselves well

to the tracking and other procedures associated with division nine cases.

Accordingly, the clerk will be directed to change the designation in civil

action number 08-CV-1290, one of four cases filed by David McChesney

currently pending, to reflect the division nine designation in place of the

current division six assignment.

     B.    <u>Consolidation</u>

     The next matter to be addressed is the question of whether the two

above-captioned cases brought by McChesney are sufficiently related to

justify consolidation, in the interest of justice and to avoid overlap and

undue expense.  Because this issue implicates nondispositive relief, it

falls within the scope of my statutory jurisdiction, the standard referral

under General Order No. 25, and this court's local rules.  28 U.S.C. §

636(b)(1)(A); *see also, e.g., Kelly v. Kelly,* 911 F. Supp. 66, 69 (N.D.N.Y.

1996) (Hurd, M.J.)

     Consolidation of actions is governed by Rule 42(a) of the Federal

Rules of Civil Procedure, which provides as follows:

> **(a) Consolidation**.  If actions before the court
> involve a common question of law or fact, the court
> may: (1) join for hearing or trial any or all matters at
> issue in the actions; (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary
> cost or delay.

Fed. R. Civ. P. 42(a).  Under that rule, courts have discretion to grant

consolidation in order to avoid unnecessary costs and delay.  *Johnson v.*

*Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir.), *cert. denied,* 498 U.S.

920, 111 S. Ct. 297 (1990); *DuBois v. State of New York*, 966 F. Supp. 144, 149 (N.D.N.Y. 1997) (McAvoy, C.J.).  In this circuit, courts have taken the view that considerations of judicial economy ordinarily favor consolidation.  *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993); *Johnson*, 899 F.2d at 1285; *Doe v. Village of Saugerties*, Nos. 1:07-CV-228, 1:07-CV-243, 1:07-CV-245, 1:07-CV-505, 2007 WL 1814682, at *2 (N.D.N.Y. June 18, 2007) (Treece, M.J.).  That discretion, however, is not unfettered, and ultimately the right to a fair and impartial trial takes precedence over considerations of convenience.  *Id.*

There is significant overlap in the claims asserted in the two most recently filed actions by McChesney.  The complaints in both actions name OMH Commissioner Hogan and Executive Director Sawyer as defendants, and assert constitutional claims arising out of the content of the sex offender treatment program administered at the CNYPC. Accordingly, I find joinder of those two actions to be appropriate, and will order their consolidation, with the first filed action 08-CV-1186 designated as the lead case, and will direct the clerk to amend its records to reflect that Chief Judge Norman A. Mordue will be the assigned district judge in

both actions, with myself remaining as the assigned magistrate judge.[4]

### C. *In Forma Pauperis* Application

I have reviewed plaintiff's complaint and request to proceed *in forma pauperis* in the two consolidated matters. I find that plaintiff's complaint does not meet the criteria for *sua sponte* dismissal under Rule 28 U.S.C. § 1915(e), which governs IFP proceedings and directs, in pertinent part, that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . – (i) is frivolous or malicious; (ii) fails to state on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). I also find, after reviewing plaintiff's submissions, that McChesney may proceed with this matter IFP, since he has set forth facts establishing sufficient economic need.[5] *See* No. 08-CV-1186 (NAM/DEP) (Dkt. No. 3);

---

[4]    For purposes of considering the possibility of consolidation, I have reviewed plaintiff's complaints in 08-CV-0163 (FJS) and 08-CV-0563 (NAM). Plaintiff's claims in those actions are distinctly different both from those set forth in these two consolidated cases, and from each other. Accordingly, I find that consolidation is not appropriate with respect to those actions.

[5]    The Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(b), requires an inmate who seeks IFP status to pay, over a period of time, the full amount of the filing fee provided for in 28 U.S.C. § 1914(a), which is currently $350.00 for most civil actions. In addition, this district requires all inmates to submit an inmate authorization form issued by the clerk's office. *See* Northern District of New York Local Rule 5.4(b). As a civil detainee, however, plaintiff is not considered a "prisoner" under the PLRA. *See Makas v. Miraglia*, No. 05 CIV 7180, 2007 WL 724603, at *12 n. 6 (S.D.N.Y. Mar. 5, 2007); *Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350, 2006 WL 1234971, at

No. 08-CV-1290 (DNH/DEP) (Dkt. No.2).

> D.    Injunctive Relief

In his motions for injunctive relief in the two actions which have been

consolidated, McChesney asks the court to issue an order preventing

defendants from 1) using polygraph and penile plethysmograph

examinations upon him; 2) giving or teaching any program containing

religious connotations, references, rituals, or practices; and 3) using any

autobiography prepared pursuant to the sex offender treatment program

as an investigative tool.  The court now turns to consideration of plaintiff's

request for interim injunctive relief.

The standard a court must utilize in considering whether to grant a

request for injunctive relief is well-settled in this circuit.  To warrant the

issuance of a preliminary injunction, a movant must show: (a) irreparable

harm and (b) either (1) a likelihood of success on the merits of the claim

or (2) sufficiently serious questions going to the merits and a balance of

---

*3 (S.D.N.Y. May 8, 2006) (the definition of "prisoner" in the PLRA does not include a civil detainee).  *See also Michau v. Charleston County*, S.C., 434 F.3d 725, 727-28 (4th Cir. 2006) (civil detainee is not a "prisoner" under the PLRA); *Perkins v. Hedricks*, 340 F.3d 582, 583 (8th Cir. 2003) (same); *Page v. Torrey*, 201 F.3d 1136, 1139-40 (9th Cir. 2000) (person civilly detained following completion of criminal sentence is not a "prisoner" within the meaning of the PLRA).  Accordingly, plaintiff is not required to submit an inmate authorization form in order to be eligible for IFP status and avoid *sua sponte* dismissal by the court.

hardships tipping decidedly toward the party seeking injunctive relief.

*D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.

2006); *see also Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992)

(affirming a district court's denial of an inmate's request for preliminary

injunction); *Roucchio v. LeFevre*, 850 F. Supp. 143, 144 (N.D.N.Y. 1994)

(McAvoy, C.J.) (adopting a report and recommendation of a magistrate

judge that denied inmate's request for injunctive relief).  An injunction is an

extraordinary remedy, to be awarded only upon careful consideration of

the competing interests of the parties presented in connection with an

application for such relief.  *Winter v. Natural Res. Def. Council*, __ U.S.

__, 129 S. Ct. 365, 375-76 (2008) (citation omitted).

> 1. <u>Irreparable Harm</u>

As to this first factor, where an alleged deprivation of constitutional

rights is involved, courts generally do not require a further showing of

irreparable harm by the party seeking injunctive relief.  *Mitchell v. Cuomo*,

748 F.2d 804, 806 (2d Cir. 1984).  In this case, McChesney alleges that

he is being denied the right to freely practice according to his religious

beliefs (or, more accurately, absence of religious beliefs). The Second

Circuit has suggested that "[t]he loss of First Amendment freedoms, for

even minimal periods of time, unquestionably constitutes irreparable injury." *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir. 1991) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Plaintiff further alleges he is being forced to incriminate himself in violation of his Fifth Amendment rights, and that inculpatory evidence derived from the constitutional deprivation could serve to extend the length of his civil confinement.  Such an allegation of a Fifth Amendment deprivation similarly supports a finding of likely irreparable harm.  Accordingly, the court will assume, for purposes of this motion only, that McChesney may suffer irreparable harm if the requested relief is not granted.

2.      Likelihood of Success on Merits

Despite the fact that he or she has established irreparable harm, a party is not entitled to injunctive relief unless there is also proof of a likelihood of succeeding on the merits of a claim, or evidence that establishes the existence of sufficiently serious questions going to the merits of a claim and a balance of hardships tipping decidedly toward the party seeking such relief.  *See Covino*, 967 F.2d at 77.  In the present case, plaintiff has only submitted his own applications for injunctive relief, containing the reasons why he believes his requests should be granted.

*See* No. 08-CV-1186 (NAM/DEP) (Dkt. No. 2); No. 08-CV-1290

(DNH/DEP) (Dkt. No. 3).  McChesney has failed to submit proof or

evidence, in either the form of affidavits or a verified complaint, which

meet this standard.   *See* Fed. R. Civ. P. 65(b); *see also Warner Bros.,*

*Inc. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 748-49 (S.D.N.Y. 1988).

While this deficiency alone would justify denial of the plaintiff's motion, I

will nonetheless proceed to examine the merits of his legal claims.

The Free Exercise Clause prohibits "governmental compulsion either

to do or refrain from doing an act forbidden or required by one's religion,

or to affirm or disavow a belief forbidden or required by one's religion."

*Mozert v. Hawkins*, 827 F.2d 1058, 1066 (2d Cir. 1987), *cert. denied*, 484

U.S. 1066, 108 S. Ct. 1029 (1988).[6]  While atheism falls within the realm

of protection of the First Amendment, *see Alexander v. Schenk*, 118

F.Supp. 2d 298 (N.D.N.Y. 2000) (Kahn, J.), plaintiff has not set forth any

beliefs or practices forbidden or required by his religion, and similarly has

---

[6]     Plaintiff appears to be making Free Exercise claims in his complaints, but then
references the Establishment Clause in his motion for preliminary injunction in the first
action.  No. 08-CV-1186 (NAM/DEP) (Dkt. No. 2).  To the extent plaintiff may be
claiming the sex offender treatment program violates the Establishment Clause, the
court finds that argument similarly unavailing, particularly in light of the plaintiff's failure
to offer proof that the program has a non-secular purpose and that the principle or
primary effect of the program is to promote or inhibit religion.  *See Boyd v. Coughlin*,
914 F. Supp. 828, 831-33 (N.D.N.Y. 1996) (McAvoy, C.J.).

failed to establish any governmental compulsion regarding those beliefs or

practices.  *See Boyd*, 914 F. Supp. at 834.  In that regard, plaintiff has

failed to prove that he was coerced into participating in the alleged

religious exercises by virtue of his enrollment in the sex offender treatment

program, and that no secular alternatives were made available to patients

raising religious objections to the content of the treatment programs.  *See*

*Warner v. Orange County Dept. of Probation*, 115 F.3d 1068, 1075 (2d

Cir. 1997).  Moreover, plaintiff has not presented the court with sufficient

evidence to establish that the various treatment programs used, including

Dialectic Behavior Therapy and "The Good Lives Model" – which, plaintiff

claims, are based upon Zen Buddhism and Spirituality – are in fact

religious in nature in First Amendment terms.  *Compare Warner*, 115 F.3d

at 1075 (finding a "Twelve Steps" program which "placed a heavy

emphasis on spirituality and prayer" and instructed belief in "a Power

greater than ourselves" was an intensely religious event) *with Boyd*, 914

F. Supp. at 833 ("This court is unaware of a controlling decision that

equates spirituality with religion, such that any reference to spirituality in . .

. [a] treatment program . . . runs afoul of the First Amendment.") *and*

*Moore v. Trippe*, 743 F. Supp. 201, 203 n.1 (S.D.N.Y. 1990) ("This court

does not understand Zen Buddhism to be a religion in the traditional

sense.").

Plaintiff has similarly failed to put forth any proof or evidence

regarding his self-incrimination claims.  Specifically, plaintiff has failed to

submit evidence to show that the sex offender treatment program

constitutes unconstitutional compulsion under the Fifth Amendment.  *See*

*Edwards v. Ladlair*, No. 9:07-CV-00059, 2008 WL 3156214, at *5

(N.D.N.Y. Aug. 4, 2008) (Singleton, Jr., J.) (citing *McKune v. Lile*, 536

U.S. 24, 44-45, 122 S. Ct. 2017, 2030-31 (2002)) ("The test, as articulated

in *McKune*," for whether sex offender treatment programs requiring

discussion of criminal history "constitute compulsory self-incrimination

within the scope of the Fifth Amendment's . . . proscription . . . . depends

upon the severity of the consequences [resulting from] the choice made

by the prisoner not to participate and discuss his crimes."); *see also*

*United States v. Jones*, 299 F.3d 103, 111 (2d Cir. 2002) (quoting

*McKune*, 536 U.S. at 49, 122 S. Ct. at 2033 (O'Connor, J., concurring))

("Not all pressure necessarily 'compels' incriminating statements").  I note,

moreover, that, the Second Circuit has held that requiring the use of a

polygraph examination for a convicted sex offender as a condition of

14

supervised release does not violate the privilege against self-incrimination

because polygraph evidence is generally inadmissible, and the individual

would be free to challenge the evidence should it be used against him in a

future proceeding.  *United States v. Johnson*, 446 F.3d 272, 278-80 (2d

Cir. 2006); *United States v. Santiago*, No. 03 Cr. 664, 2008 WL 1959548,

at *1 (S.D.N.Y. May 5, 2008) (citing *Johnson*, 446 F.3d at 278-80); *see*

*also United States v. Zinn*, 321 F.3d 1084, 1090-92 (11th Cir. 2003)

(requiring polygraph testing as a condition of supervised release generally

does not violate the Fifth Amendment).  Moreover, a penile plethymograph

does not implicate plaintiff's Fifth Amendment right against self-

incrimination because the procedure is not testimonial, but rather a

physical test of plaintiff's sexual reactions to various stimuli.  *See Walrath*

*v. United States*, 830 F. Supp. 444, 446 (N.D. Ill. 1993).  Additionally,

there is no indication that the results of a plethysmograph could be used

to criminally prosecute plaintiff; instead the results are more likely used to

assess McChesney's progress in the treatment program.  *Id.*

Furthermore, to the extent plaintiff is claiming that, as a result of any

potentially incriminating statements, the term of his civil confinement may

be lengthened, as opposed to a claim of subsequent criminal prosecution,

I note that such claims are not cognizable under the Fifth Amendment, which only protects an individual from being forced to make incriminating statements that might reasonably be used against him or her in a later criminal proceeding.  *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 273, 103 S. Ct. 608, 622 (1983) (Blackmun, J. concurring) (quoting *Brown v. Walker*, 161 U.S. 591, 597, 16 S. Ct. 644, 647 (1896)) ("It is, of course, black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify 'if the testimony sought cannot possibly be used as a basis for, or in aid of, criminal prosecution against the witness.'"); *See also Andover Data Serv. v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1082 (2d Cir. 1989) ("The prohibition against compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings.").

In his second action, plaintiff alleges the possibility of future criminal prosecution resulting from his participation in the portion of the sex offender treatment program requiring the creation of an autobiography in which he would be forced to disclose his sexual offense history, including any uncharged crimes.  *See* No. 08-CV-1290, Complaint (Dkt. No. 1) at

(A); Plaintiff's Memorandum (Dkt. No. 3) at 1.  As noted earlier, whether

requiring discussion of criminal history during the course of a sex offender

treatment program constitutes compulsory self-incrimination within the

scope of the Fifth Amendment depends on the severity of the potential

consequences for refusing to make such disclosures.  *See Edwards*, 2008

WL 3156214, at *5 (citing *McKune*, 536 U.S. at 44-45, 122 S. Ct. at 2030-

31).  Moreover, even if McChesney can prove that he would be required to

discuss his prior uncharged criminal acts, *see* No. 08-CV-1290, Complaint

(Dkt. No. 1) Exh. A (Autobiography Instructions), the Second Circuit has

noted that it is possible to alleviate Fifth Amendment concerns by other,

less restrictive means than by eliminating a sex offender treatment

program altogether, such as, for example, through offering immunity from

prosecution.  *Donhauser v. Goord*, 181 Fed. App'x 11, 12 (2d Cir. 2006).

Accordingly, Fifth Amendment considerations are not implicated at this

juncture since McChesney has failed to determine whether he could be

permitted to disclose those acts for which he has not been prosecuted

under a grant of immunity.

In sum, I find that plaintiff has failed to satisfactorily demonstrate

that he has either a likelihood of succeeding on the merits of his alleged

claims or sufficiently serious questions going to the merits of such claims

and a balance of hardships tipping decidedly toward him.  For the reasons

stated above, I therefore recommend that plaintiff's request for injunctive

relief be denied.

III.    SUMMARY

Based upon the foregoing discussion, it is hereby

ORDERED, that the clerk shall consolidate Civil Actions Nos. 08-

CV-1186 (NAM/DEP) and 08-CV-1290 (DNH/DEP), with the first of those

two actions being designated as the lead case, and shall revise its records

to reflect that both cases are now assigned to Chief District Judge

Norman A. Mordue, to whom the first of those cases was assigned and

myself as the assigned magistrate judge; and it is further

ORDERED, that the clerk shall revise the designation of No. 08-CV-

1290 (DNH/DEP) to reflect a division nine case assignment; and it is

further

ORDERED, that plaintiff's *in forma pauperis* application in the lead

case, No. 08-CV-1186 (NAM/DEP) (Dkt. No. 3), is GRANTED[7] and

---

[7]    Plaintiff should note that although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

plaintiff's *in forma pauperis* application in the member case, No. 08-CV-1290 (DNH/DEP) (Dkt. No. 2), is DENIED as moot.  The clerk shall issue summonses and forward them, along with copies of both complaints, to the United States Marshals for service upon the named defendants.  The Clerk shall forward a copy of the summons and complaint by mail to the Office of the Attorney General for the State of New York, together with a copy of this Order; and it is further

ORDERED, that a response to plaintiff's complaint be filed by the defendants or their counsel as provided for in the Federal Rules of Civil Procedure after service of process on the defendants; and it is further

RECOMMENDED, that plaintiff's motions for injunctive relief in No. 08-CV-1186 (NAM/DEP) (Dkt. No. 2) and in No. 08-CV-1290 (DNH/DEP) (Dkt. No. 3) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report, recommendation and order upon the parties in accordance with

this court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:      December 23, 2008
            Syracuse, NY