IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────

DAVID McCHESNEY,

Plaintiff,

Civil Action No.
vs.                                          9:08-CV-1186 (NAM/DEP)
(Lead Case)

MICHAEL F. HOGAN, Commissioner,
New York State Office of Mental Health, *et al.*,

Defendants.

───────────────────────────────────────

DAVID McCHESNEY,

Plaintiff,

Civil Action No.
vs.                                          6:08-CV-1290 (NAM/DEP)
(Member Case)

MICHAEL F. HOGAN, Commissioner,
New York State Office of Mental Health, *et al.*,

Defendants.

───────────────────────────────────────

APPEARANCES:                                 OF COUNSEL:

FOR PLAINTIFF:

DAVID McCHESNEY, *Pro Se*
25527-604
CNY Psychiatric Center
P.O. Box 300
Marcy, New York 13403

FOR DEFENDANTS:

HON. ANDREW M. CUOMO                    ADELE TAYLOR-SCOTT ESQ.
Office of Attorney General             Assistant Attorney General
State of New York
The Capitol                            DEAN J. HIGGINS, ESQ.
Litigation Bureau                      Assistant Attorney General
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff David McChesney, a convicted sex offender who has been

civilly committed to the Central New York Psychiatric Center ("CNYPC"),

for participation in sex offender treatment, has commenced these two

actions pursuant to 42 U.S.C. § 1983, claiming deprivation of his civil

rights.  In his complaints, plaintiff alleges that the Sex Offender Treatment

Program ("SOTP") administered at the CNYPC is predicated in part upon

religious tenets, and he is being forced, contrary to his beliefs as an

atheist, to practice religion in violation of his First Amendment rights.  In

addition, plaintiff alleges that various other aspects of the SOTP, including

use of polygraph and penile plethysmograph ("PPG") testing and the

requirement that he compose and share an autobiography detailing his

sexual history, violate his Fifth Amendment right against self-

incrimination.[1]  As relief, plaintiff seeks both damages and an injunction against the continued use of the problematic religious and self-incriminating elements of the treatment program.

Defendants have moved for dismissal of the complaints on a variety of grounds, both procedural and substantive, arguing that 1) plaintiff's complaints are legally insufficient because he has failed to separately number paragraphs and include all exhibits referenced in one of the two complaints; 2) plaintiff's damage claims against the defendants in their official capacities are precluded under the Eleventh Amendment; 3) plaintiff's forced self-incrimination claims lack merit; and 4) they are entitled to qualified immunity with respect to plaintiff's First Amendment cause of action in light of the unsettled state of the law governing such a claim.  For the reasons set forth below, I recommend that plaintiff's Fifth Amendment self-incrimination claim be dismissed because he has failed

---

[1]     A plethysmograph is "[a]n instrument that measures variations in the size of an organ or body part on the basis of the amount of blood passing through or present in the [body] part." American Heritage Dictionary 1338 (4th ed. 2000).  According to materials regarding the programming at the CNYPC, use of the PPG is intended to "assess sexual interests and measure treatment effectiveness.  In this treatment, while wearing a sterilized gauge around the penis, a machine records any erection response resulting from listening to and/or viewing depiction of sexual and non-sexual materials. This assessment occurs within a laboratory setting for complete privacy."  *See Decker v. Hogan*, No. 9:09-CV-0239 (TJM/GJD), 2009 WL 3165830 at *1 n.1 (N.D.N.Y. Sept. 28, 2009).

to plead that information set forth in his autobiography or derived through polygraph or PPG testing has been used against him in a criminal proceeding, that his damage claims against the defendants as individuals alleging violation of the First Amendment be dismissed based on qualified immunity, and that any damage claims against defendants as state officials be dismissed pursuant to the Eleventh Amendment.  To the extent that plaintiff's First Amendment claim seeks injunctive relief against defendants in their official capacities only, however, I further recommend that this claim survive defendants' motion, and additionally that defendants' motion to dismiss the complaint for failure to meet the governing pleading requirements be denied.

I.    BACKGROUND[2]

On or about December 6, 2007 the plaintiff, a convicted sex offender, was involuntarily committed to the care and custody of the New

_____

[2]    In light of the procedural posture of this case, my recitation of the relevant facts is drawn principally from plaintiff's complaints, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  Portions of the background description which follows have been derived from the exhibits attached to plaintiff's complaints, which may also properly be considered in connection with a dismissal motion.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561 (1992); *see also Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

York State Office of Mental Health and designated to the CNYPC
pursuant to the mandates of New York Mental Hygiene Law Article 10.[3]
*See generally*, Civil Action No. 9:08-CV-1186 (NAM/DEP) Complaint (Dkt.
No. 1) § 4.  While there, McChesney is required to participate in the
SOTP, an established sex offender treatment regimen that is broken down
into four distinct segments.  *Id.*, Exh. D; Civil Action No. 9:08-CV-1290
(NAM/DEP) Complaint (Dkt. No. 1) Exhs. B and C.  Phase I of the
program, entitled "Orientation and Treatment Readiness", is described as
the "readiness phase" and "provides basic information related to the
commitment process, goals of the sex offender treatment program, and
the treatment plan which documents an individual's progress towards
meeting the program goals." *Id.*  Phases II through IV of the SOTP are
more intensive and are based upon what is described as a "structured
treatment protocol."  *Id.*

In order to participate in the latter three phases of the SOTP, which
are conducted in group therapy settings, a patient is required to sign a
consent form, described by the plaintiff as a contract.  Civil Action No.

---

[3]     Enacted in 2007, Article 10 of the Mental Hygiene Law provides for civil
commitment and treatment of certain individuals convicted of committing sex crimes,
recognizing the danger that recidivistic offenders present when released into the
community.  *See* N.Y. Mental Hyg. Law § 10.01.

9:08-CV-1186 (NAM/DEP) Complaint (Dkt. No. 1) § 4 and Exhs. D and E.

Significantly, the consent form discloses the potential use of polygraph

and PPG testing during the course of the final three phases and notes that

a separate written consent is required for use of each of those types of

testing.  *Id.*   While advised of his or her right to refuse such testing, the

patient is also pointedly informed that a refusal "may slow or prevent

advancement in SOTP Phases of treatment."  *Id.*

Attached to plaintiff's first complaint are two versions of the SOTP

Phase II - IV Consent to Participate in Treatment form.   Civil Action No.

9:08-CV-1186 (NAM/DEP) Complaint (Dkt. No. 1) Exhs. D and E.

According to the plaintiff, the second of those forms "was recently issued

by defendant [OMH Commissioner] Hogan."  *Id.* § 4.  The more recent

consent form differs from the earlier version in several critical respects.

First, while the original form provided that polygraph examinations "are not

designed to be incriminating or to be used in court", the amended version

instead states that "[t]he courts may choose to use any information

gathered from [polygraph] examinations."  *Id.*  The more recent iteration

also specifically advises that the polygraph examination may be used to

explore the patient's sexual history.  *Id.*

In addition to use of polygraph and PPG testing as treatment tools, the SOTP employs course materials which, plaintiff asserts, incorporate or are predicated upon Buddhist and Christian beliefs and practices, including "The Good Lives Model and Boundaries Programs," which discusses spirituality; "Dialectic Behavior Therapy", "Self Care Skills I and II", and "Relaxation Programs", all teaching the rituals and practices of Buddhism; and "Growing up Male, Problem Solving, Anger Management Programs", described as "Hazleton Products which incorporate Christian beliefs and practices into their programs."  Civil Action No. 9:08-CV-1186 (NAM/DEP) Complaint  (Dkt. No. 1) § 4.  McChesney, who is an atheist, asserts that by requiring him to submit to teaching using those materials defendants have violated his First Amendment rights.  *Id.*

In or about August of 2008, as part of the SOTP program, plaintiff was directed by Donald Sawyer, Executive Director of the CNYPC, to author and be prepared to present an autobiography.  Civil Action No. 9:08-CV-1290) (NAM/DEP) Complaint (Dkt. No. 1) § 4.  Preparation of such an autobiography is a requirement of the Phase II treatment protocol and is described in a handout entitled "Introduction to Autobiographies."  Civil Action No. 9:08-CV-1290 (NAM/DEP) Complaint  (Dkt. No. 1) Exh. A.

Segment four of the questionnaire given to patients for use in complying with this requirement requests information about criminal history and asks specific questions regarding the patient's participation in sex crimes and other unlawful sexual conduct.  *Id.,* Exhs. A and C.  On or about October 9, 2008, defendant Valerie Colasante, a psychologist at the facility, advised plaintiff that each participant in the program would be questioned regarding his or her autobiography, which was to recount a history of sexual offenses including charged and uncharged crimes.   Civil Action No. 9:08-CV-1290 (NAM/DEP) Complaint  (Dkt. No. 1) § 4.  According to McChesney, Terry Maxymillan, the SOTP Director, issued an order that plaintiff's autobiography be collected, placed in his file, and made available for inspection by the Attorney General.  *Id.*  On October 30, 2008, plaintiff was directed by defendant Colasante to turn in his autobiography.  *Id.*  Plaintiff was later removed from the treatment group based upon a refusal to permit his autobiography to be copied.  *Id.*

II.    PROCEDURAL HISTORY

The first of these two actions, Civil Action No. 9:08-CV-1196 (NAM/DEP), was commenced by the plaintiff on November 6, 2008.  The second, Civil Action No. 9:08-CV-1290 (NAM/DEP), was filed some three

weeks later on November 28, 2008.   The two actions were subsequently

consolidated by the court, on its own initiative, based upon a report issued

by me on December 23, 2008 recommending that measure and approval

of that recommendation by Chief District Judge Norman A. Mordue on

March 9, 2009.[4],[5]   Civil Action No. 9:08-CV-1186 (NAM/DEP) Dkt. Nos. 4,

13.

Plaintiff's complaint in Civil Action No. 9:08-CV-1186 (NAM/DEP)

names OMH Commissioner Michael Hogan and CNYPC Executive

Director Donald Sawyer as defendants and asserts claims under the First

and Fifth Amendments to the United States Constitution.  McChesney's

complaint in 9:08-CV-1290 (NAM/DEP) names Commissioner Hogan and

Executive Director Sawyer as well as three new defendants, including

SOTP Director Terri Maxymillian; Psychologist Valerie Colasante; and

---

[4]    Plaintiff currently has two other actions pending in this court, including
*McChesney v. Hogan, et al.*, No. 9:08-CV-0163 (FJS) (filed Feb. 11, 2008), in which
plaintiff complains of the inadequacy of the law library at the CNYPC, and *McChesney
v. Hogan, et al.,* No. 9:08-CV-0563 (NAM) (filed June 10, 2008), in which McChesney
has lodged claims against the named defendants for failure to protect him from
assaults the hands of fellow patients at the center.  A fifth action commenced by the
plaintiff, *McChesney v. Miller, et al.*, No. 9:08-CV-0195 (TJM) (filed Feb. 21, 2008),
was closed in March of 2008 based upon plaintiff's voluntary withdrawal of the claims
set forth in his complaint without prejudice.  *See id.*, Dkt. Nos. 4-6.

[5]    The court's consolidation order designated Civil Action No. 9:08-CV-1186
(NAM/DEP) as the lead action.  All references to docket entries in this report, unless
indicated otherwise, will refer to the docket sheet in that case.

Registered Nurse Regina Anderson, identified as a Treatment Team Leader at the Center.  The complaint in that action focuses on the compelled self-incrimination aspect of the SOTP program, particularly the requirement to complete an autobiography, seemingly asserting a claim under the Fifth Amendment to the United States Constitution.  *Id.*

On April 21, 2009 defendants moved pursuant to Rules 10(b) and 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of plaintiff's complaints in these two consolidated actions.  Dkt. No. 17.  In their motion defendants allege that 1) plaintiff has failed to meet the pleading requirements of Rule 10(b) by not separately numbering the paragraphs and because of his failure to include some of the exhibits that are specifically incorporated by reference into one of the complaints; 2) the Eleventh Amendment bars plaintiff's damage claims against the defendants in their official capacities; 3) plaintiff's Fifth Amendment claim lacks merit; and 4) defendants are entitled to qualified immunity in connection with plaintiff's First Amendment claim.[6]  Although plaintiff did not respond to defendants' motion within the allotted time, which expired

---

[6]    Defendants' motion also requests a protective order precluding plaintiff from engaging in discovery pending determination of their motion. That relief is no longer necessary, however, since by order entered on April 23, 2009, I stayed discovery in the action pending resolution of defendants' motion to dismiss. *See* Dkt. No. 19.

on May 26, 2009, he has since submitted what is denominated as a

declaration in further support of his action.  Dkt. No. 22.  Without providing

great detail, plaintiff's submission states that a New York State Supreme

Court Justice has made a finding that McChesney suffers from "a mental

abnormality involving such a strong predisposition to commit sex offenses,

and such an inability to control behavior, that he is likely to be a danger to

others and to commit sex offenses if not confined to a secure treatment

facility"; it appears that plaintiff is suggesting that this determination was

based upon the sexual autobiography that he was compelled to prepare

as part of his participation in the SOTP.

III.   DISCUSSION

A.   Failure To Comply With Governing Pleading Requirements

As a threshold matter, in their motion defendants argue that

plaintiff's complaints do not conform to applicable pleading requirements

in that they do not consist of separately numbered paragraphs and that he

has also failed to attach Exhibits A through C despite their incorporation

by reference into his complaint in Civil Action No. 9:08-CV-1186

(NAM/DEP).  Defendants urge the court to exercise its discretion to

dismiss the complaints due to these omissions.

11

Federal Rule of Civil Procedure 10 imposes a requirement whose intent is largely pragmatic, requiring, among other things, that a pleading consist of separately numbered paragraphs "each of which shall be limited as far as practicable to a statement of a single set of circumstances[.]" Fed. R. Civ. P. 10(b).  Rule 10(b) is designed to assist litigants and the court by allowing the interposition of a responsive pleading and the corresponding framing of issues with sufficient clarity to allow an orderly and meaningful presentation of a plaintiff's claims and any corresponding defenses, either on motion or at trial.  *See Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (Munson, S.J.).

Analysis of plaintiff's amended complaint, in the face of defendants' motion, is informed not only by the salutary purposes to be served by these pleading requirements but additionally by two equally important principles.  First, it is a well settled that a complaint prepared by a *pro se* litigant should be liberally construed in his or her favor.  *Salahuddin* v. *Cuomo,* 861 F.2d 30, 42-43 (2d Cir. 1988) .  Second, courts generally favor adjudication of cases on their merits rather than on the basis of a technicality or procedural nicety.  *Id.* at 42; *see also Zdziebloski v. Town of East Greenbush,* 101 F.Supp.2d 70, 72 (N.D.N.Y. 2000) (Kahn, J.) (citing

*Salahuddin*); *Upper Hudson Planned Parenthood, Inc. v. Doe*, 836 F.

Supp. 939, 943 n.9 (N.D.N.Y. 1993) (McCurn, S.J.).

Unlike the situation presented in many instances involving *pro se*

litigants, including the case cited by the defendants, *Jochnowitz v. Russell*

*Sage College,* No. 90-CV-1101, 1992 WL 106813 (N.D.N.Y. May 13,

1992), plaintiff's complaints in these two actions are neither rambling nor

prolix and instead concisely state the facts upon which relief is sought.[7]   In

this instance the factual allegations recited in both complaints are broken

down into separate paragraphs.  In the case of plaintiff's complaint in Civil

Action No. 9:08-CV-1186 (NAM/DEP) plaintiff has attempted to separately

letter some of the paragraphs; in Civil Action No. 9:08-CV-1290

(NAM/DEP), however, the factual recitation includes paragraphs that are

wholly unnumbered.

The salutatory objective to be served by Rule 10 is to permit the

formulation of a proper pleading and response.  That end can be served in

this instance by assuming that the paragraphs outlined in section four of

plaintiff's two complaints are separately numbered,  beginning with

paragraph number one, with defendants responding accordingly in their

---

[7]   Copies of all unreported decisions cited in this document have been appended
for the convenience of the *pro se* plaintiff.

answers.

Slightly more problematic is the fact that plaintiff's complaint in Civil Action No. 08-CV-1186 (NAM/DEP) fails to attached three exhibits referenced in the complaint.  This is a curable defect and presumably the result of an oversight on the plaintiff's part.  I therefore recommend against dismissal of plaintiff's complaint on this basis.  Instead, I respectfully suggest that plaintiff be directed to submit to the court and defendants' counsel copies of the exhibits referenced in his complaint in Civil Action No. 9:08-CV-1186 (NAM/DEP) before defendants must file an answer so that they may know the full extent of the allegations to which they are responding.

###### B.    Dismissal Standard

The second prong of defendants' motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A motion to dismiss a complaint brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand

scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949

(2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S.

Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure

requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*

While modest in its requirement, that rule commands that a complaint

contain more than mere legal conclusions; "[w]hile legal conclusions can

provide the framework of a complaint, they must be supported by factual

allegations."  *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its

face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)

(citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second

Circuit has observed, "[w]hile *Twombly* does not require heightened fact

pleading of specifics, it does require enough facts to 'nudge [plaintiffs']

claims across the line from conceivable to plausible.'" *In re Elevator

Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S.

at 570 127 S. Ct. at 1974).

C.    Eleventh Amendment

Plaintiff's complaints in these consolidated actions seek both monetary and injunctive relief.  They do not, however, clearly specify whether monetary damages are sought against the defendants in their official capacities, or instead just as individuals.  To the extent that plaintiff's complaints may be construed as seeking damages against the defendants as state officials, they argue that such relief is precluded under the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.[8]

*Richards v. State of New York Appellate Division, Second Dep't*, 597 F.

---

[8]    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State.  As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment.  *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)).  To the extent that a state official is sued for damages in his or her official capacity, the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.[9]  *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3105 (1985); *Hafer v. Melo*, 502 U.S. 21, 26, 112 S.Ct. 358, 361 (1991) .

Since plaintiff's damage claim against the named defendants in their official capacities is in reality a claim against the State of New York, thus exemplifying those against which the Eleventh Amendment protects, it is subject to dismissal.  *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend that this portion of defendants' motion be granted and that plaintiff's damage claim against the defendants in their capacity as state officials be dismissed.[10]

D.   Plaintiff's Fifth Amendment Self Incrimination Claim

---

[9]   By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer*, 502 U.S. at 30-31, 112 S.Ct. at 364-65.

[10]   Dismissal of plaintiff's damage claim against the defendants in their official capacities does not preclude plaintiff from maintaining an action for injunctive relief against those individuals as state officials.  *Frew ex. rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S. Ct. 899, 903 (2007) ("[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.") (citations omitted).

Defendants next seek dismissal of plaintiff's Fifth Amendment claim. In support of this portion of their motion defendants argue that using polygraph and PPG testing and an autobiography potentially containing incriminating information, including that related to past uncharged crimes, in a civil setting to treat the plaintiff as a sex offender does not run afoul of the Fifth Amendment's privilege against self-incrimination.

The Fifth Amendment, which applies to the states through the Fourteenth Amendment, *see Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489 (1964), insures that no person "shall be compelled in any criminal case to be a witness against himself. U.S. Const. amend. V. That provision protects persons against being compelled in a criminal case to give self-incriminating testimony. *McKune v. Lile*, 536 U.S. 24, 35-36, 122, S. Ct. 2017, 2026 (2002); *Higazy v. Templeton,* 505 F.3d 161, 171 (2d Cir. 2007). As the Supreme Court has noted, "[t]he privilege reflects a complex of our fundamental values and aspirations, and marks an important advance of the development of our liberty." *Kastrigar v. United States,* 406 U.S. 441, 444, 92 S. Ct. 1653, 1656 (1972). While speaking in terms of criminal cases, the Fifth Amendment offers a privilege that "can be asserted in any proceeding, civil or criminal, administrative or

judicial, investigatory or adjudicatory . . . ." *Id*. at 444-45, 92 S. Ct. at 1656 (footnote omitted).

The first question presented in connection with plaintiff's Fifth Amendment claim is whether by virtue of the SOTP's autobiography requirement he has been compelled by the government to give incriminating information.  "The test for whether a statement was improperly obtained by coercion is 'determined by the totality of the circumstances'".  *Higazy,* 505 F.3d at 170 (citing and quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998)).

The element of compulsion, in the context of the Fifth Amendment, was addressed by the Supreme Court in *McKune*.  536 U.S. at 48-49, 122 S. Ct. at 2032-33 (O'Connor, J., concurring).  *McKune* involved a Kansas prison inmate who, as a participant in a sex abuse treatment program, was required not only to discuss and accept responsibility for the crime of conviction but also to complete a sexual history form detailing all prior sexual activities.  *McKune,* 536 U.S. at 29-32, 122 S. Ct. at 2022-24.   The consequences for refusing to participate in the treatment program included curtailment of various privileges and a transfer into a more secure facility with more limited opportunities for movement.  *Id.* at 30-31,

122 S. Ct. at 2022-23.  A plurality of the Court concluded that the plaintiff in that case had failed to demonstrate a sufficient degree of constitutionally significant compulsion, although no one opinion garnered a majority.   Focusing on the compulsion element of the self-incrimination clause Justice Kennedy, who delivered an opinion in which three others joined, concluded that the limitations faced for failing to cooperate were similar to that which other prison inmates could also be exposed and did not rise to a level sufficient to constitute undue compulsion and thus run afoul of the Fifth Amendment.[11]  *McKune,* 536 U.S. at 41-47, 122 S. Ct. 2017.

In *Edwards v. Ladlair* this court went one step further, concluding the requirement that the petitioner in that habeas case disclose prior uncharged sex offenses during the course of a prison sex offender treatment program did not violate his Fifth Amendment right against self-

---

[11]   In its decision *McKune*, the Supreme Court took notice of the serious threat presented by sex offenders released into the community and the high rate of their recidivism, noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault[,]" adding that "[s]tates thus have a vital interest in rehabilitating convicted sex offenders."  *McKune,* 536 U.S. at 33, 122 S. Ct. at 2024 (citations omitted).  The Court also observed in *McKune* that "[a]cceptance of responsibility is the beginning of rehabilitation," noting that the acceptance of responsibility for past offenses "gives inmates a basis to understand why they are being punished and to identify the traits that cause such a frightening and high risk of recidivism."  *Id.*, 536 U.S. at 33-34, 47, 122 S. Ct. 2025, 2032.

incrimination since the sanction for refusing to participate in the program was the denial of good time credit allowances, a discretionary privilege, and under *McKune* the denial of prison privileges does not suffice to establish the requisite degree of compulsion for purposes of the Fifth Amendment.  No. 9:07-CV-0059-JKS, 2008 WL 3156214 at *6 (N.D.N.Y. Aug. 4, 2008), *aff'd*, 2010 WL 292749 (2d Cir. Jan. 26, 2010).  As acknowledged by Judge Singleton in *Edwards*, the *McKune* Court noted that the decision not to participate in the Kansas sex offender treatment did not affect the respondent's eligibility for good time credits or parole. *Edwards*, 2008 WL 3156214, at *5 (citing *McKune*, 536 U.S. at 38, 122. S. Ct. 2017).  *Edwards* therefore extended the reasoning in *McKune*, applying it as well to circumstances in which the sanction for failure to comply included loss of good time credits.

When addressing the compulsion element of a Fifth Amendment claim such as that now presented,

> [t]he test, as articulated in *McKune*, depends upon the severity of the consequences of the choice made by the prisoner not to participate and discuss his crimes.  536 U.S. at 44-45 (plurality), 48-50 (O'Connor, J. concurring).  Unfortunately, the Supreme Court has not provided a bright-line of demarcation above which the severity of the consequences constitutes compulsion.

*Edwards,* 2008 WL 3156214, at *5.  It is by now fairly well settled that

risking the loss of good time credits or jeopardizing the chance for parole,

alone, does not qualify as sufficiently compulsive to meet the test.  *See*

*Wolfe v. Pennsylvania Dep't of Corrections*, 334 F. Supp.2d 762, 771

(E.D. Pa. 2004); *see also Ainsworth v. Stankley,* 317 F.3d 1, 5 (1st Cir.

2002), *cert. denied*, 538 U.S. 999, 123 S. Ct. 1908 (2003); *Searcy v.*

*Simmons*, 299 F.3d 1220, 1226 (10th Cir. 2002).  Beyond these forms of

recrimination, however, the issue becomes less clear.

   In this instance, the plaintiff is a civil detainee whose liberty is being

withheld beyond the expiration of his prison sentence.  McChesney is

therefore in a very different circumstance than the inmates involved in

*Edwards* and *McKune*.  Although this is somewhat unclear from the scant

record now before the court, it appears that in all likelihood *McChesney*

has served all of the time imposed based upon his criminal sex conviction

and is now involuntarily committed for rehabilitation pursuant to the

relatively recently enacted provisions of New York Mental Hygiene Law

Article 10.  The record now before the court does not disclose what

sanctions could result from plaintiff's failure to provide the requested

information in connection with his SOTP.  Plausibly, however, one could

22

imagine that it could well result in an extension of his confinement at the

CNYPC.  This, then, is a very different situation than presented in

*McKune,* 536 U.S. at 38, 122 S. Ct. at 2027 ("in the present case,

respondent's decision not to participate in Kansas SOTP did not extend

his term of incarceration"), and the potential sanction for plaintiff's refusal

to incriminate himself suffices, at least at this early procedural juncture, to

establish the requisite degree of compulsion necessary to support a Fifth

Amendment claim.  *Decker v. Hogan,* No. 9:09-CV-0239 (TJM/GJD), 2009

WL 3165830, at *6 (N.D.N.Y. Sept. 28, 2009) (McAvoy, S.J.).

The more difficult question presented is whether, in being compelled

by officials at the CNYPC to submit to polygraph and PPG testing and

complete an autobiography, plaintiff has been unlawfully forced to

incriminate himself in violation of his right under the Fifth Amendment.  As

unsettled as the controlling legal principles were after the Court's decision

in *McKune*, the landscape was further muddied by the Supreme Court's

later decision in *Chavez v. Martinez*, 538 U.S. 760, 123 S.Ct. 1994 (2003),

another case heavily relied upon by the defendants in their motion.  That

action involved a claim brought by an individual pursuant to 42 U.S.C. §

1983, arguing that his Fifth Amendment right against self-incrimination

was violated when he was interrogated by the petitioner, a police patrol supervisor, even though the statements obtained through the course of that interrogation were never used against him in any criminal prosecution.  Under the circumstances presented the Court found no constitutional violation, since the respondent was never forced to be a witness against himself in a criminal proceeding.  *Chavez,* 538 U.S. at 767, 123 S. Ct. at 2001.

Admittedly, it is somewhat difficult to reconcile *Chavez* with some of the Court's prior decisions regarding the Fifth Amendment.  In *Kastigar,* for example, the Court noted that the privilege

> can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory, and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.

406 U.S. at 444-45, 92 S. Ct. at 1656 (footnote omitted).  *Chavez,* however, appears to stand for the proposition that while this may be true, and *Kastigar* and other cases permit invocation of the Fifth Amendment privilege in non-criminal settings, a violation of the right of against self-incrimination is inchoate until a person has been actually compelled to be a witness against himself or herself in a criminal proceeding, meaning that

24

his or her testimony or statements have been used in a criminal arena.

*Chavez*, 538 U.S. at 770, 123 S. Ct. at 2002-03.  Accordingly, since

McChesney has not alleged that he completed an autobiography

disclosing uncharged sex crimes, permitted it to be copied, and the

autobiography was used against him in a criminal in prosecution, or that

he consented to and underwent polygraph or PPG testing the results of

which were offered against him in a criminal setting, his complaint fails to

allege a Fifth Amendment violation.[12,13]  *Fifield v. Eaton,* No. 07-CV-6521L,

---

[12]   Any contention on plaintiff's part that his autobiography may be used in the future in a criminal proceeding against him is not presently ripe for adjudication. *Longway v. Jefferson County Bd. of Supervisors*, 24 F.3d 397, 400 (2d Cir. 1994) ("An issue is ripe for judicial resolution only if it presents a real and substantial controversy, not a mere hypothetical question.") (internal quotations and citation omitted).  This decision therefore does not foreclose plaintiff from challenging the use of his autobiography in a subsequent criminal proceeding, nor does it preclude him from bringing a separate action under for damages 42 U.S.C. § 1983 for violating his Fifth Amendment rights in the event that government officials attempt to use his compulsory autobiography against him in a subsequent criminal proceeding.

[13]   Even if plaintiff could establish a Fifth Amendment violation with regard to the autobiography requirement, fearing that its contents could give rise to and be used in a subsequent criminal proceeding, he could not make a plausible self-incrimination claim with regard to the polygraph and PPG testing.  Addressing the use of a polygraph examination under analogous circumstances with regard to a convicted sex offender as a condition of his supervised released, the Second Circuit has concluded that the requirement that a party submit to a polygraph exam does not violate the privilege against self-incrimination since such evidence is generally inadmissible, and the individual would be free to challenge the evidence should it be used against him in a future proceeding. *United States v. Johnson*, 446 F.3d 272, 278-80 (2d Cir. 2006); *see also United States v. Zinn*, 321 F.3d 1084, 1090-92 (11th Cir. 2003) ( holding that requiring polygraph testing as a condition of supervised release generally does not violate the Fifth Amendment), *U.S. v. Santiago,* No. 03 Cr. 66 4, 2008 WL 1959548 at *1 (S.D.N.Y. May 5, 2008) (citing *Johnson*, 446 F.3d at 278-80); and, *Decker*, 2009

2009 WL 3429791, at *3 (W.D.N.Y. Oct. 20, 2009) (claim by a convicted sex offender that defendants required him to complete forms admitting guilt of a sex offense, leading to expulsion from sex offender treatment upon his denial, held not to give rise to a Fifth Amendment violation since plaintiff failed to allege that the defendant used, sought to use, or could have used any incriminating statement against him at a criminal proceeding"); *see also Krug v. County of Rennselaer,* 559 F. Supp.2d 223, 246 (N.D.N.Y. 2008) (statements made to law enforcement officers but never used in a criminal proceeding do not give rise to a Fifth Amendment claim) (citing, *inter alia*, *Chavez,* 538 U.S. at 766, 123 S. Ct. at 2000).

I therefore recommend dismissal of plaintiff's Fifth Amendment claim in its entirety.

### E.   First Amendment

Another material aspect of plaintiff's claims in these consolidated

─────────────────────

WL 3165830 at *6.   Similarly, the use of a penile plethysmograph does not implicate plaintiff's Fifth Amendment right against self-incrimination since the test result is not testimonial but a physical test of plaintiff's sexual reactions to various stimuli.  *See Walrath v. United States,* 830 F. Supp. 444, 446 (N.D.N.Y. Ill. 1993).  Moreover, there is little likelihood that testimony involving PPG testing would pass muster under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1990) and its progeny as being sufficiently reliable to be admitted in evidence at a criminal trial.  *Decker*, 2009 WL 3165830, at *7.

actions centers upon the program materials utilized for the SOTP which,

he contends, are premised upon religious principles contrary to his beliefs

as an atheist.  Plaintiff argues that by exposing him to those materials and

requiring his participation in the SOTP the defendants have violated his

First Amendment rights.  Defendants seek dismissal of this claim on the

basis of qualified immunity, citing the state of flux of the governing legal

principles applicable to plaintiff's free exercise claim.

Qualified immunity shields government officials performing

discretionary functions from liability for damages "insofar as their conduct

does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457

U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted).  "In

assessing an officer's eligibility for the shield, 'the appropriate question is

the objective inquiry whether a reasonable officer could have believed that

[his or her actions were] lawful, in light of clearly established law and the

information the officer[  ] possessed."  *Kelsey v. County of Schoharie*, 567

F.3d 54, 61 (2d Cir. 2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 615,

119 S.Ct. 1692 (1999)).  The law of qualified immunity seeks to strike a

balance between the need to hold government officials accountable for

irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808, 815 (2009) .

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims."  *Pearson*, 555 U.S. at ___, 129 S.Ct. at 816.  The first step required the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right,[14] *Kelsey*, 567 F.3d at 61, with "the second step being whether the right is clearly established", *Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 430 n.9 (citing *Saucier*).[15]  Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently

---

[14]   In making the threshold inquiry, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151.

[15]   In *Okin*, the Second Circuit clarified that the "'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful."  *Okin*, 577 F.3d at 433, n.11 (citation omitted).

retreated from the prior *Saucier* two-step mandate, concluding in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision-makers "should be permitted to exercise their sound discretion in deciding which of the . . .  prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."[16]  *Pearson*, 555 U.S. at  ___, 129 S.Ct. at 818, 821.  In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so."  *Kelsey*, 567 F.3d at 61(citing *Pearson*, 555 U.S. at ___, 129 S. Ct. at 821) (emphasis in original).

For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs . . . should be addressed in light of the circumstances in the particular case at hand.'"  *Okin*, 577 F.3d 430

---

[16]   Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability. . .", *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985), the Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation."  *Pearson*, ___ U.S. at ___, 129 S.Ct. at 815 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 524 (1991) (per curiam)).

n.9 (quoting *Pearson*).  "The [*Saucier* two-step] inquiry is said to be

appropriate in those cases where 'discussion of why the relevant facts do

not violate clearly established law may make it apparent that in fact the

relevant facts do not make out a constitutional violation at all.'" *Kelsey*,

567 F.3d at 61 (quoting *Pearson*, 129 S. Ct. at 818).

 Turning first to whether plaintiff has established a plausible First

Amendment violation, I note at the outset that the First Amendment

provides that "Congress shall make no law respecting an establishment of

religion, or prohibiting the free exercise thereof . . ."  U.S. Const. amend 1.

That amendment, which applies to the states through the Fourteenth

Amendment, *Decker*, 2009 WL 3165830, at *2, prohibits a governmental

entity from favoring one religious denomination over another and

additionally protects against "government compulsion either to do or

refrain from doing an act forbidden or required by one's religion, or to

affirm or disavow a leave forbidden or required by one's religion.  *Id.*

(citing and quoting *Mozert v. Hawkins  County Bd. of Educ.,* 827 F.2d

1058, 1066 (2d Cir. 1987), *cert. denied*, 484 U.S. 1066, 108 S. Ct. 1029

(1988)).  As an atheist, plaintiff is subject to the protections of the First

Amendment.  *Decker*, 2009 WL 3165830, at *3 (citing, *inter alia, Wallace*

*v. Jaffree,* 472 U.S. 38, 52-53, 105 S. Ct. 2479, 2487-88 (1985)).

Because plaintiff contends that the SOTP subjects him to religious tenets

that violate his generally held religious beliefs, he has successfully stated

a plausible First Amendment claim sufficient to withstand dismissal at this

early stage.  *Decker*, 2009 WL 3165830, at *3.

Turning to the second prong of the qualified immunity inquiry, "[t]he

relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable [government

employee in the defendant's position] that his [or her] conduct was

unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202, 121

S.Ct. at 2156 (citation omitted).  When deciding whether a right was

clearly established at the relevant time, a court should consider

> (1) whether the right in question was defined with "reasonable
> specificity"; (2) whether the decisional law of the Supreme
> Court and the [Second Circuit] support the existence of the
> right in question; and (3) whether under preexisting law a
> reasonable defendant official would have understood that his
> or her acts were unlawful.

*Wright v. Smith*, 21 F.3d 496, 500 (2d Cir. 1994) (quoting *Benitez v. Wolff*,

985 F.2d 662, 666 (2d Cir. 1993)).  The objective reasonableness test will

be met, and qualified immunity enjoyed, where government employees of

reasonable competence could disagree as to whether by his or her

31

alleged conduct the defendant would be violating the plaintiff's rights. *Okin*, 577 F.3d at 433 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)).  "If, on the other hand, no [government worker] of reasonable competence would conclude that the conduct in question is lawful, there is no immunity."  *Okin*, 577 F.3d at 433 (citing *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995)).

As defendants have argued, the law is anything but clear on the question of whether compelled use by officials at the CNYPC of treatment materials peripherally based upon religious principles violates the rights of patients involuntarily committed and subjected to the program.  *Pratt v. Hogan*, 631 F. Supp.2d 192, 198 (N.D.N.Y. 2009) (Hurd, J).  That inquiry turns, in part, upon whether secular alternatives are offered for those who voice a *bona fide* religious objection, *see, e.g. Miner v. Goord,* No. 09-0674-cv, 2009 WL 4072085, at *2 (2d Cir. Nov. 25, 2009) (citing, *inter alia*, *DeStefano v. Emergency Hous. Group, Inc.*, 247 F.3d 397, 408 (2d Cir. 2001) (cited in accordance with Fed. R. App. Proc. 32.1).  In this case, there is no question that persons of reasonable competence in defendants' circumstances could disagree on whether the compelled use of religious based SOTP program materials would violate the First

32

Amendment.

Based upon the lack of clearly established guidance on the specific legal issue presented, I recommend a finding that defendants are entitled to qualified immunity with respect to plaintiff's First Amendment religious claim.  *Pratt,* 631 F. Supp. 2d at 198; *see also Bush v. Goord*, No. 03-CV-759S, 2009 WL 790358, at *8-9 (W.D.N.Y. Mar. 25, 2009).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

 Plaintiff's complaints in these two consolidated actions, though sparse in their allegations, are sufficient to place defendants on notice of his claims and permit them to both frame an answer and engage in discovery to flesh out any remaining causes of action, provided that the missing exhibits in Civil Action No. 9:08-CV-1186 (NAM/DEP) are filed with the court.

Turning to the merits of plaintiff's claims, I conclude that plaintiff has not pleaded a plausible claim that his required participation in the SOTP while involuntarily committed at the CNYPC potentially violates his Fifth Amendment right against self-incrimination.  I further find that defendants are entitled to qualified immunity from suit with respect to plaintiff's claim for damages in connection with plaintiff's First Amendment's religious

exercise claim, in light of the fact that the legal principles regarding how the First Amendment's right of a free exercise affects the required use of SOTP teaching materials of a religious tenor are distinctly unsettled, but that plaintiff should be permitted to pursue his First Amendment claim against them as officials for purposes of injunctive relief.  I further find that all claims against the defendants for damages in their official capacities are subject to dismissal on the basis of their Eleventh Amendment. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 17) be GRANTED, in principal part, and that all of plaintiff's claims, with the exception of his First Amendment cause of action against the defendants in their official capacities seeking injunctive relief, be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      February 26, 2010
            Syracuse, NY



Page 1

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Michael L. DECKER, Plaintiff,
v.
Michael F. HOGAN, Commissioner, NYS Office of
Mental Health; Donald Sawyer, Executive Director,
Central New York Psychiatric Center, Defendants.
**No. 9:09-CV-0239 (TJM/GJD).**

Sept. 28, 2009.

Michael L. Decker, pro se.

Office of the Attorney General, Charles J. Quackenbush,
Esq., Assistant Attorney General, of Counsel, State of
New York, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. Introduction**

**\*1** Plaintiff Michael L. Decker commenced this action *pro
se* seeking relief pursuant to 42 U.S.C. § 1983 for the
alleged violation of his constitutional rights. Dkt. No. 1.
Plaintiff is a civil detainee under Article 10 of the New
York Mental Health Law, and has been confined at the
Central New York Psychiatric Center ("CNYPC") since
August, 2008. Plaintiff challenges the constitutionality of
three aspects of the Sexual Offender Treatment Program
("SOTP") administered by the New York State Office of
Mental Health ("OMH") at CNYPC. Plaintiff claims that
the SOTP utilizes treatment programs which are
faith-based, and that the requirement that he participate in
those programs violates his rights under the First

Amendment. *Id.* at 2-3. Plaintiff also claims that
SOTP-required polygraph and penile plethysmography
("PPG") [FN1] examinations are unconstitutional. *Id.* at 3-4.
According to plaintiff, successful completion of the SOTP
is a condition of his release from CNYPC. *Id.* at 3-4.
Named as defendants are Michael Hogan, Commissioner
of OMH, and Donald Sawyer, Executive Director of
CNYPC. Plaintiff seeks monetary damages as well as
declaratory and injunctive relief.[FN2]

> FN1. Penile Plethysmography, as defined by the
> OMH in the Advancement to SOTP Phase II-IV
> Consent to Participate in Treatment, is intended
> to "assess sexual interests and measure treatment
> effectiveness. In this treatment, while wearing a
> sterilized gauge around the penis, a machine
> records any erection response that results from
> listening to and/or viewing depiction of sexual
> and non-sexual materials. This assessment occurs
> within a laboratory setting with complete
> privacy." Dkt. No. 3-3 at 8. For recent
> discussions of the wide range of opinion
> regarding the efficacy of PPG examinations and
> their proper role in sex offender treatment
> programs, see *United States v. Rhodes,* 552 F.3d
> 624, 626-29 (7th Cir.2009) (finding that
> challenge to PPG as condition of supervised
> release not ripe where condition would become
> effective only after defendant served more than
> ten years imprisonment and several other
> conditions were met); *United States v. Weber,*
> 451 F.3d 552, 561-66 (9th Cir.2006)
> (requirement of PPG testing as part of sex
> offender treatment program imposed as a
> condition of supervised release requires
> heightened procedural protections).

> FN2. Two other CNYPC detainees have filed §
> 1983 actions in the Northern District challenging
> these same aspects of the SOTP. See *Pratt v.
> Hogan,* No. 6:08-CV-1003, 2009 WL 1916284
> (N.D.N.Y. Jul. 6, 2009) (Hurd, J.)
> (injunctive/declaratory relief claims dismissed
> pursuant to *Younger* abstention; defendants
> granted qualified immunity from claims for
> money damages); *McChesney v. Hogan,* No.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

9:08-CV-1186, Report-Recommendation that motion for injunctive relief be denied, 2009 WL 607398 (N.D.N.Y. Dec. 23, 2008) (Peebles, M.J.), *adopted,* 2009 WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009) (Mordue, C. J.). McChesney also claims that the SOTP requirement that he compile an autobiography is unconstitutional. *McChesney,* 2009 WL 607398, at *1.

In addition to his complaint, plaintiff filed a motion seeking a temporary restraining order and preliminary injunction enjoining defendants from mandating participation in faith-based programs and from requiring polygraph or PPG examinations as a part of the SOTP. Dkt. No. 3-2 at 1-2.

By Order of this Court filed March 26, 2009, plaintiff was granted leave to proceed *in forma pauperis* and the U.S. Marshal was directed to effect service of process on the defendants. Dkt. No. 5. Plaintiff's request for the issuance of a temporary restraining order was denied. Defendants were directed to file a response to the preliminary injunction motion. *Id.* at 2-3.

Defendants have responded in opposition to plaintiff's motion for injunctive relief. Dkt. No. 8. Defendants also filed a "cross-motion" seeking dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[FN3]

> FN3. Plaintiff has not filed a response to defendants' motion to dismiss.

These motions are before the Court for consideration.[FN4]

> FN4. The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion. Any appeal taken from this Memorandum-Decision and Order, if appropriate, will be to the Court of Appeals for the Second Circuit.

## II. Motion to Dismiss Standard

In deciding a Rule 12(b)(6) dismissal motion, "the court must accept the material facts alleged in the complaint as true, and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994).[FN5] The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (italics in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007).

> FN5. The "complaint" includes any written instrument attached to it as an exhibit and any statements or documents incorporated into the complaint by reference. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 674 (2d Cir.1995); Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

*2 The burden undertaken by the moving party is substantial, as the question presented by the motion to dismiss is not whether the non-moving party is likely ultimately to prevail, "but whether the claimant is entitled to offer evidence to support the claims." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (other citations omitted). In order to withstand a motion to dismiss, a complaint must plead enough facts to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ("The court should freely give leave when justice so requires.").

## III. First Amendment Claims

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

Plaintiff identifies himself as an atheist.[FN6] Since his placement at CNYPC, plaintiff has been assigned to the SOTP. Participation in the SOTP has "subjected [plaintiff] to religious practices and rituals." Dkt. No. 1 at 2. The "Good Lives Model and Boundaries Programs" teach the participants that they must "believe in something denoted as spirituality." *Id.* at 3. In addition, the SOTP includes Dialectic Behavior Therapy, which teaches "the rituals and practices" of Buddhism. *Id.* The SOTP also utilizes several "Hazeldon products which incorporate Christian beliefs and practices." *Id.* These programs include "From the Inside Out," "Growing Up Male," "Problem Solving" and "Anger Management." [FN7]

> FN6. The following facts are drawn from plaintiff's complaint and are accepted as true for purposes of the pending motion to dismiss. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Boykin v. KeyCorp,* 521 F.3d 202, 204 (2d Cir.2008).

> FN7. In his memorandum in support of the motion for injunctive relief, plaintiff states that the Hazeldon products are "Christian based and incorporate the 12 steps/12 traditions of A.A. (Alcoholics Anonymous)." Dkt. No. 3 at 3.

The First Amendment, made applicable to states by the Fourteenth Amendment, states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The First Amendment embraces two fundamental concepts: "freedom to believe and freedom to act" on one's beliefs. *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940). The First Amendment's Establishment Clause prohibits government from officially preferring one religious denomination over another. Thus, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente,* 456 U.S. 228, 244 (1982); *Skoros v. City of New York,* 437 F.3d 1, 16 (2d Cir.2006). The First Amendment also protects individuals against "government compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." *Mozert v. Hawkins County Bd. of Educ.,* 827 F.2d 1058, 1066 (2d Cir.1987), *cert. denied,* 484 U.S. 1066 (1988).

Defendants urge dismissal of plaintiff's First Amendment claims, arguing that he has failed to state a cognizable claim under either the Establishment Clause or the Free Exercise Clause. Dkt. No. 8-2 at 7-9. Defendants contend that the state law pursuant to which plaintiff is confined "was clearly enacted for secular purposes" and that the purposes of the SOTP "are clearly secular as well." *Id.* at 7-8. With respect to the particular treatment programs complained of by plaintiff, defendants maintain that dismissal is warranted because there is "no proof" that the programs "either advance or inhibit religion;" there is "no evidence" that the programs "foster any entanglement with religion;" and "no proof" of "governmental compulsion impacting upon his atheistic beliefs or practices." *Id.* at 8-9.

**\*3** The question presented by defendants' motion to dismiss is not whether plaintiff has or can adduce facts sufficient to prove his First Amendment claims. It may become clear, at summary judgment or at some later stage in the litigation, that plaintiff's claims are not adequately supported. But at this early stage, the Court must accept plaintiff's allegations as true and may not dismiss the case unless it is clear that it would be impossible for plaintiff to make out a legally cognizable claim.

Reading plaintiff's complaint liberally and accepting the well-pleaded allegations thereof as true, the Court finds that the First Amendment claim is sufficient to withstand defendants' motion to dismiss. Atheism is subject to the protections of the First Amendment. *Wallace v. Jaffree,* 472 U.S. 38, 52-53 (1985) ("the Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all."); *McChesney,* 2009 WL 607398, at *6 (Peebles, M.J.); *Alexander v. Schenck,* 118 F.Supp.2d 298, 300-02 (N.D.N.Y.2000) (Kahn, J.). Plaintiff identifies himself as an atheist, and alleges that he "has been subjected to religious practices and rituals" in the course of participating in the SOTP. Dkt. No. 1 at 2. Plaintiff claims that portions of the program are based upon Zen Buddhism and Christianity and that the SOTP "teach[es] that you have to believe in something denoted as spirituality." *Id.* at 2-3. Plaintiff alleges that he is compelled to participate in these faith-based programs in order to secure his release from

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

CNYPC, and that this compelled participation violates his "right to believe or not as my conscience dictates." *Id.* at 3, 5. *See, e.g., Warner v. Orange County Dept. of Probation,* 115 F.3d 1068, 1075 (2d Cir.1997) (holding that because the plaintiff was sent to Alcoholics Anonymous as a condition of his probation, without offering a choice of other providers, he was "plainly" coerced in violation of the Establishment Clause); *Alexander,* 118 F.Supp.2d at 301 (prisoner ordered to attend Alcohol and Substance Abuse Treatment Program was "coerced" for purposes of First Amendment).

Defendants' motion to dismiss plaintiff's First Amendment claim is denied. Accordingly, the Court will address plaintiff's motion for preliminary injunctive relief.

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district court's denial of inmate's request for preliminary injunction). Where a movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief sought, the requested injunction is properly characterized as mandatory rather than prohibitory. A party seeking a mandatory injunction must make a "clear" or "substantial" showing of the likelihood of success, as well as irreparable harm should the injunction not be granted. *Jolly v. Coughlin,* 76 F.3d 468, 473-74 (2d Cir.1996).

*4 Plaintiff asks that this Court issue a preliminary injunction prohibiting defendants from mandating participation in faith-based SOTP programs. Dkt. No. 3-2. The Court treats plaintiff's motion as seeking mandatory rather than prohibitory relief. Accordingly, plaintiff must make a clear or substantial showing of the likelihood of success on the merits of his claims.

Where a deprivation of constitutional rights is alleged, specific proof of irreparable injury is not required. *See e.g., Mitchell v.. Cuomo,* 748, F.2d 804, 806 (2d

Cir.1984). For purposes of this motion, defendants do not contest plaintiff's assertion that he will suffer irreparable harm if the requested relief is not granted. *See* Dkt. No. 8-2 at 6. *See McChesney v. Hogan,* No. 9:08-CV-1186, Report-Recommendation, 2009 WL 607398, at *3 (N.D.N.Y. Dec. 23, 2008), *adopted,* 2009 WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009) (Mordue, C.J.).

A party seeking injunctive relief must also demonstrate a likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief. *Covino,* 967 F.2d at 77.

While the Court has found that plaintiff's allegations are sufficient to withstand defendants' Rule 12(b)(6) motion to dismiss, the present record does not contain evidence sufficient to warrant the issuance of injunctive relief. The record before the Court consists only of plaintiff's description of these programs and his claim that defendants are "proselytizing Christianity" and mandating his participation in faith-based programs in contravention of his avowed atheism. Plaintiff has not presented the Court with program materials or other evidence demonstrating a clear or substantial likelihood of success on the merits of his claim that SOTP programs such as Dialectic Behavior Therapy, "The Good Lives Model" and various Hazeldon programs are, in fact, religious in nature in First Amendment terms. *Compare Warner,* 115 F.3d at 1075 (finding a "Twelve Steps" program which "placed a heavy emphasis on spirituality and prayer" and instructed belief in "a Power greater than ourselves" was an intensely religious event) with *Boyd v. Coughlin,* 914 F.Supp. 828, 833 (N.D.N.Y.1996) (McAvoy, J.) ("This court is unaware of a controlling decision that equates spirituality with religion, such that any reference to spirituality in ... [a] treatment program ... runs afoul of the First Amendment."). See *McChesney,* 2009 WL 607398, at *4. Plaintiff has also failed to support his motion with evidence that he was coerced into participating in the alleged religious exercises or rituals by virtue of his enrollment in the SOTP, and that no secular alternatives were made available to patients raising religious objections to the content of the treatment programs. *See Warner,* 115 F.3d at 1075 (recognizing that consideration of plaintiff's First Amendment claim "would be altogether different" if he had been offered a reasonable choice of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

therapy providers).

**\*5** Accordingly, plaintiff's motion for preliminary injunctive relief is denied.

### IV. Fifth Amendment Claims

SOTP participants seeking to advance to Phase II-IV of the program are asked to consent to polygraph and PPG examinations. Dkt. No. 1 at 3.[FN8] The Advancement Contract signed by plaintiff in December, 2008 contains the following general disclaimer: "[t]he court, your attorney, the Attorney General's Office, and other relevant participants in your commitment process have access to the information you reveal regarding your sexual offending behaviors and may use that information during the civil management process." Dkt. No. 3-3 at 7.[FN9] The section of the Advancement Contract specifically describing the required polygraph examinations includes the following statement: "The courts may choose to use any information gathered from these examinations." *Id.* at 8.[FN10] The Advancement Contract advises SOTP participants that a refusal to undergo the requested examinations "may slow or prevent advancement in SOTP phases of treatment." *Id.*

> FN8. See note 5 *infra.*

> FN9. Plaintiff references these documents as exhibits (C) and (D) to the complaint. Although the complaint as filed does not include these exhibits, the materials (as well as the documents identified as exhibits A and B), were filed as exhibits in support of plaintiff's motion for injunctive relief. Both submissions were filed on the same day.

> FN10. A previous version of the Advancement Contract advised that polygraph examinations "are not designed to be incriminating or to be used in court." See Dkt. No. 3-3 at 5.

The Fifth Amendment's privilege against

self-incrimination, which applies to the states via the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege

> not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

*Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)). The right not to answer potentially incriminating questions however, is not absolute. Rather, "[t]he prohibition against compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings." *Andover Data Services, a Div. of Players Computer, Inc. v. Statistical Tabulating Corp.* 876 F.2d 1080, 1082 (2d Cir.1989). Thus, "[i]t is ... black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify 'if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness.' " *Pillsbury Co. v. Conboy,* 459 U.S. 248, 273 (1983) (Blackmun, J., concurring) (quoting *Brown v. Walker,* 161 U.S. 591, 597 (1896)).

Outside of the prison context, the Supreme Court has "described compulsion in relatively broad terms." *Ainsworth v. Risley,* 244 F.3d 209, 213 (1st Cir.2001), *vacated on other grounds,* 536 U.S. 953 (2002). The Court has held that "certain types of penalties are capable of coercing incriminating testimony," including: termination of employment, the loss of a professional license, ineligibility to receive government contracts, and the loss of the right to participate in political associations and to hold public office. *McKune v. Lile,* 536 U.S. 24, 49-50 (2002) (O'Connor, J., concurring in the judgment) (citing cases). The Supreme Court has defined "compulsion" as anything that makes the exercise of the right "costly." *Spevack v. Klein,* 385 U.S. 511, 515 (1967). See *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 (1977) (rejecting "the notion that citizens may be forced to incriminate themselves because it serves a governmental need.").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

**\*6** Writing for a plurality of the Court in *McKune,* Justice Kennedy concluded that the setting in which the compulsion arises is an integral part of the constitutional analysis. *Id., 536 U.S. at 36* ("The fact that these consequences are imposed on prisoners, rather than ordinary citizens, moreover, is important in weighing respondent's constitutional claim."). Noting that "[a] broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction," *id.,* Justice Kennedy concluded that the "atypical and significant hardship" analysis articulated in *Sandin v. Connor, 515 U.S. 472 (1995)* "provides a reasonable means of assessing whether the response of prison administrators to correctional and rehabilitative necessities are so out of the ordinary that one could sensibly say they rise to the level of unconstitutional compulsion." *McKune, 536 U.S. at 41.* Concurring with the judgment reached by the *McKune* plurality, that withholding certain privileges upon an inmate's refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that encumbers the constitutional right not to incriminate oneself, Justice O'Connor wrote separately to express her opinion that the Fifth Amendment compulsion standard is broader that *Sandin's* "atypical and significant hardship" standard. *Id., 536 U.S. at 48* (O'Connor, J., concurring).[FN11]

> FN11. The inmate plaintiff in *McKune,* complained that he faced transfer to a less-desirable maximum security prison, and that he also faced the loss of his personal television set, less access to prison organizations and the gym area, a reduction in certain pay opportunities and restricted visitation rights. *McKune, 536 U.S. at 39.* Justice Kennedy, writing for a plurality, emphasized that the decision not to participate in the Kansas Sexual Abuse Treatment Program "did not extend [the prisoner's] term of incarceration" nor did it "affect his eligibility for good-time credits or parole." *Id., 536 U.S. at 38.*

In this case, plaintiff, a civil detainee faced with prolonged civil detention if he refuses to submit to polygraph and PPG examinations, has adequately alleged that he faces "compulsion" that is constitutionally significant even under the *Sandin* analysis utilized by the *McKune* plurality.

Notwithstanding the foregoing, however, the Court finds that plaintiff has failed to state a Fifth Amendment claim because neither polygraph nor PPG examinations violate the Fifth Amendment privilege against self-incrimination. The Second Circuit has held that requiring the use of a polygraph examination for a convicted sex offender as a condition of supervised release does not violate the privilege against self-incrimination because polygraph evidence is generally inadmissible, and the individual would be free to challenge that evidence should it be used against him in a future proceeding. *United States v. Johnson, 446 F.3d 272, 278-80 (2d Cir.2006); United States v. Santiago, No. 03 Cr. 664, 2008 WL 1959548, at \*1 (S.D.N.Y. May 5, 2008); see also United States v. Dotson, 324 F.3d 256, 261 (4th Cir.2003)* (polygraph test, "inadmissible in nearly every circumstance at trial," may be required as a condition of supervised release); *United States v. Zinn, 321 F.3d 1084, 1090-92 (11th Cir.2003)* (requiring polygraph testing as a condition of supervised release generally does not violate the Fifth Amendment). *Compare United States v. Weber, 451 F.3d 552, 568 n. 17 (9th Cir.2006)* (defendant subject to polygraph testing as requirement of supervised release retains Fifth Amendment rights "unless granted use-andderivative-use immunity").

**\*7** The Court also find that results of PPG examinations do not implicate plaintiff's Fifth Amendment right against self-incrimination because the procedure itself is not testimonial but, rather, is an assessment of an individual's physical reactions to various stimuli. *See McChesney, 2009 WL 607398, at \*5;Walrath v. United States, 830 F.Supp. 444, 446 (N.D.Ill.1993).* Moreover, courts asked to consider the admissibility of PPG examinations have uniformly refused to do so, finding that PPG results fail to meet scientific validity prong for admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-90 (1990)). See Doe ex. rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1266 (9th Cir.2000)* ("courts are uniform in their assertion that the results of penile plethysmographs are inadmissible as evidence because there are no accepted standards for this test in the scientific community."); *United States v. Powers, 59 F.3d 1460, 1470-71 n. 13 (4th Cir.1995)* (appellant "has not provided, and we have not found, any decisions acknowledging the validity of the use of penile

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

plethysmography other than in the treatment and monitoring of sex offenders.").

Based upon the foregoing, the Court finds that the allegations of the complaint, as drafted, do not state a claim upon which relief may be granted for the violation of plaintiff's Fifth Amendment right against self-incrimination stemming from polygraph and/or PPG examinations conducted as part of the SOTP. This aspect of defendants' motion to dismiss is granted.[FN12]

> FN12. In light of this ruling, the Court need not address plaintiff's motion for injunctive relief. Defendants' claim that they are entitled to qualified immunity from damages on this claim is also moot.

**V. Qualified Immunity**

Defendants raise the affirmative defense of qualified immunity. Dkt. No. 8-2 at 11-12. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir.2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir.1997)).

The Second Circuit has recognized that the availability of qualified immunity may "turn[ ] on factual questions that cannot be resolved at [the motion to dismiss] stage of the proceedings." Taylor v. Vermont Dept. of Educ., 313 F.3d 768, 793 (2d Cir.2002).[FN13] Thus, where the "objective reasonableness" of defendants' actions depends at least in part on what information they had regarding the substance of plaintiff's complaints, an adjudication as to the applicability of the qualified immunity affirmative defense on the basis of the pleadings alone would be premature.

> FN13. In Stephenson, the court advised that a "defendant should press a qualified immunity defense during pretrial proceedings so that such a claim can be disposed of by summary judgment

where possible, or factual disputes material to the defense can be identified and presented to the jury." Stephenson, 332 F.3d at 76.

Although a factual basis for affording qualified immunity to defendants on plaintiff's First Amendment claims may arise during the course of discovery, the Court cannot at this early stage of the proceeding, accepting all of plaintiff's allegations as true, conclude that defendants are entitled to qualified immunity as a matter of law. See Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 255 (2d Cir.2001); Bailey v. Pataki, 08 Civ. 8563, 2009 WL 2001178, at *6 (S.D.N.Y. Jul. 10.2009). Accordingly, defendants' motion to dismiss plaintiff's First Amendment claims for money damages based on qualified immunity is denied, without prejudice to renew.

**VI. Conclusion**

*8 Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted is granted in part and denied in part. The well-pleaded allegations of the complaint sufficiently allege a violation of plaintiff's First Amendment rights resulting from his required participation in faith-based treatment programs. Plaintiff's motion for preliminary injunctive relief is denied. Defendants' request for dismissal of plaintiff's First Amendment claims for money damages on qualified immunity grounds is denied, without prejudice. Plaintiff's Fifth Amendment claims are dismissed, without prejudice.

WHEREFORE, on the basis of the above, it is hereby

ORDERED, that defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **granted in part and denied in part** as set forth above, and it is further

ORDERED, that plaintiff's motion for preliminary injunctive relief is **denied,** and it is further

ORDERED, that defendants file an answer to complaint

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

**no later than October 31, 2009,** and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

IT IS SO ORDERED.

N.D.N.Y.,2009.
Decker v. Hogan
Slip Copy, 2009 WL 3165830 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1992 WL 106813 (N.D.N.Y.)
(Cite as: 1992 WL 106813 (N.D.N.Y.))

C  Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Rose S. JOCHNOWITZ, Plaintiff,
v.
RUSSELL SAGE COLLEGE, Junior College of
Albany, Defendants.
**No. 90-CV-1101.**

May 13, 1992.

Rose S. Jochnowitz, Plaintiff pro se.

Pattison, Sampson, Ginsberg & Griffin, P.C., Albany,
N.Y. (Miriam M. Netter, of counsel), for defendants.

*MEMORANDUM-DECISION AND ORDER*

MUNSON, Senior District Judge.

**\*1** Presently before the court is defendants' motion
pursuant to Fed.R.Civ.P. 8(a)(2), 8(e)(1), 10(b), and
12(b)(6) to dismiss plaintiff's amended complaint for
failure to state a claim. Alternatively, defendants move
pursuant to Rule 12(f) to strike all immaterial, impertinent,
and scandalous matter from the amended complaint. As
another alternative, defendants move pursuant to Rule
12(e) for a more definite statement of plaintiff's claims.
The court heard oral argument on October 28, 1991 in
Albany, New York. For the reasons stated below,
defendants' motion to dismiss is granted.

This is not the first time the court has addressed the
problems with plaintiff's age discrimination and retaliation
claims in this case. Plaintiff filed her original complaint on
June 21, 1991. In lieu of an answer, defendants filed a
motion to dismiss or provide a more definite statement,
returnable July 29, 1991. Plaintiff cross-moved for leave

to amend her complaint and submitted with her motion
papers a proposed amended complaint. From the bench on
July 29, 1991 the court delivered its decision denying
defendants' motion and granting plaintiff's motion, but
rejecting plaintiff's proposed amended complaint. The
court ruled that only when the initial complaint and
proposed amended complaint were read together did
plaintiff state a colorable retaliation claim under the
four-part test set forth in *Hollander v. American
Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990) sufficient to
avoid defendants' dismissal motion. Plaintiff was given
specific instructions to incorporate all of her allegations
into one document to be entitled "Amended Complaint,"
and she indicated to the court that she understood what
was required. Transcript of Proceedings on July 29, 1991
("Tr."), Document ("Doc.") 10, at 10. Plaintiff's amended
complaint was filed on August 19, 1992, to which
defendants responded with the instant motion to dismiss.

Defendants' arguments are similar to those raised in the
first motion to dismiss. Defendants contend that the
amended complaint fails to contain a short and plain
statement of plaintiff's claim showing that she is entitled to
relief; engenders confusion by failing to list averments in
separately numbered paragraphs consisting as much as is
practicable of a single set of circumstances; includes
numerous unrelated allegations and appendices which
obfuscate the vaguely alleged retaliation and force the
defendants to speculate as to what exactly they must
respond; improperly includes case law and quoted portions
from the court's July 29, 1991 bench decision as well as
references to the events described in her original
complaint; and is "prolix, confused, and confusing" such
that dismissal of the amended complaint in its entirety is
warranted. Affidavit of Miriam Netter, attached to Doc.
12, at ¶ 13.

The court agrees. Although the United States Court of
Appeals for the Second Circuit has ruled in *Easton v.
Sundram*, 947 F.2d 1011, 1015 (2d Cir.1991) and *Branum
v. Clark*, 927 F.2d 698, 705 (2d Cir.1991), that a district
court should not dismiss a complaint under Rule 12(b)(6)
" 'unless it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would
entitle him to relief,' " (quoting *Conley v. Gibson*, 355
U.S. 41, 45-46 (1957)), the Second Circuit has also stated

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 106813 (N.D.N.Y.)
(Cite as: 1992 WL 106813 (N.D.N.Y.))

that this principle must be applied in the context of other principles governing the pleadings in a federal lawsuit. *Branum, 927 F.2d at 704-05; Salahuddin v. Cuomo, 861 F.2d 40, 41-43 (2d Cir.1988)*. These other principles include the requirement in Rule 8(a)(2) that the pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and the mandate in Rule 8(e) that each averment "shall be simple, concise, and direct." Also included is the provision in Rule 10(b) that averments shall be made in separately numbered paragraphs and that each paragraph "shall be limited as far as practicable to a statement of a single set of circumstances...." When a complaint fails to comply with one or more of these rules it is within the court's discretion to dismiss the complaint; however, "such a dismissal ordinarily should be accompanied by leave to file an amended complaint." *Branum, 927 F.2d at 705*. When leave to amend already has been given and the "successive pleadings remain prolix and unintelligible," the court may dismiss without further leave to amend. *Salahuddin, 861 F.2d at 42*.

**\*2** The latter scenario is precisely the situation presented in the case at bar. Plaintiff's allegations in their current form are a labyrinth of unconnected pieces of information with no clear statement of what her claim is all about. In the first paragraph of her amended complaint, plaintiff identifies her claim as a "charge of retaliation against Russell Sage College for a court-approved contract signed in February, 1988. Plaintiff seeks only to continue the terms of the contract without humiliation and harassment, or to provide equivalent substitute courses." Amended Complaint, Doc. 11, at ¶ 1. This statement of her claim does not identify any protected activity in which plaintiff engaged pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d), which appears to be the jurisdictional basis upon which plaintiff rests her retaliation claim. While plaintiff asserted in her initial complaint that the contract signed in 1988 represented the settlement of an age discrimination charge she filed with the EEOC against Russell Sage College that same year, *see* Complaint, Doc. 1, at 1, no such allegation is made in the amended complaint. The court concludes that plaintiff's amended complaint fails the first prong of the four-part *Hollander* test to establish a claim of retaliation in violation of the ADEA, because the amended complaint fails to allege that plaintiff was engaged in a protected activity. *See Hollander 895 F.2d at 85*.

In the second paragraph of her amended complaint, plaintiff loosely describes the terms of the 1988 contract. Then plaintiff attempts to weave a tangled mass of threads together to provide the fabric from which her claim is cut. She traces back to 1981 when "various efforts were made to eliminate the plaintiff's position and to humiliate inwardly this complainant" (Amended Complaint, Doc. 11, at ¶ 4), although she never specifies what took place, who the actors were, nor what relation the alleged "efforts" have to her claim of retaliation stemming from the court-approved contract in 1988. Indeed, there can be no causal relation between the 1988 contract and these alleged "efforts" dating back to 1981 because the efforts occurred prior to the time plaintiff claims she engaged in protected activity. Thus, to the extent that plaintiff bases her amended complaint on events which occurred prior to 1988, her allegations fail the fourth prong of the *Hollander* test requiring a causal connection between the protected activity and the adverse employment action. *See Hollander, 895 F.2d at 85*. Similarly, to the extent that plaintiff bases her amended complaint on the reference to harassment of other older personnel at Russell Sage College (Amended Complaint, Doc. 11, at ¶ 5), this allegation also fails the fourth prong of the *Hollander* test because there is no causal link between the protected activity plaintiff claims she engaged in and employment actions adversely affecting other employees. With regard to the numerous appendices plaintiff attaches to the amended complaint, none of these appendices are expressly connected to any allegation in the amended complaint.[FN1] Their inclusion in this lawsuit adds to the confusion engendered by the vague and disjointed nature of plaintiff's allegations, leaving the defendants and the court to speculate on how these appendices are related to plaintiff's claim of retaliation stemming from the 1988 contract. To the extent that plaintiff relies on the appendices to substantiate her claim, the court does not find the causal connection sufficiently stated to pass the *Hollander* test.

**\*3** Plaintiff includes in her amended complaint lengthy quotations from this court's October 28, 1991 bench decision, case law, and a portion of the defendants' motion papers filed in this case. *Id.* at ¶¶ 6-10, 13, 16. All of these quotations are inappropriate for inclusion in a complaint, as it is the court's function to analyze the law. The purpose of the complaint is to give a defendant "fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin, 861 F.2d at 42* (citing 2A Moore's

Not Reported in F.Supp., 1992 WL 106813 (N.D.N.Y.)
(Cite as: 1992 WL 106813 (N.D.N.Y.))

Federal Practice ¶ 8.13, at 8-61 (2d ed. 1987)). The amended complaint in this case never does set forth in comprehensible form any incident of alleged retaliation stemming from the court-approved contract in 1988 to which the defendants could formulate an answer.

Plaintiff provides a list of activities, "grouped and cross referenced into categories for easy reference," but provides no hint of how these activities substantiate her claim of retaliation stemming from the court-approved contract in 1988. Amended Complaint, Doc. 11, at ¶ 15. For example plaintiff's first category of retaliation, entitled "Contract Provisions," lists tutoring, teaching correctional courses, and summer session courses as subcategories. Neither the defendants nor the court have any means of determining how these three items constitute retaliation by defendants against the plaintiff. In her second category of retaliation, entitled "Other Allegations," plaintiff lists several items without dates and without details of who was involved or what transpired sufficient to determine how these items constitute retaliation by defendants against the plaintiff as a result of the court-approved contract in 1988. These two categories of retaliation, representing the crux of plaintiff's amended complaint, do not comply with the third or fourth prong of the *Hollander* test, or with the requirements of Rule 8(a)(2), because even when read in connection with the remainder of the amended complaint and appendices they do not demonstrate that plaintiff is entitled to relief. They do not describe the alleged activities with enough detail to determine whether an employment action adverse to plaintiff occurred nor whether such action, if it did occur, is causally connected to any protected activity. *See Hollander,* 895 F.2d at 85. And, as the court has already determined, the amended complaint fails to demonstrate that plaintiff participated in a protected activity in any event.

Moreover, plaintiff includes in the second category of activities one item relating to alleged falsification of records. Amended Complaint, Doc. 11, at ¶ 15(II)(a). As fraud is alleged in this item plaintiff must comply with the pleading requirements of Rule 9(b), which mandates that the circumstances constituting fraud be stated "with particularity" and that intent be averred generally. *See Certilman v. Hardcastle, Ltd.,* 754 F.Supp. 974, 978 (E.D.N.Y.1991) (pleadings must include, time, place, speaker, and sometimes even content of alleged fraud, and must provide sufficient factual basis to support conclusory

allegation of intent). Plaintiff's amended complaint fails to satisfy each of these requirements with respect to the allegation involving fraud.

**\*4** The court acknowledges the principle that plaintiff's allegations of material fact must be accepted as true for purposes of evaluating the instant motion to dismiss. *Greenfield v. Suzuki Motor Co., Ltd.,* 776 F.Supp. 698, 700-01 (E.D.N.Y.1991). The court also acknowledges the principle that the amended complaint must be analyzed in the light most favorable to plaintiff, *id.,* particularly because plaintiff is acting pro se. Nonetheless, the court cannot identify from the amended complaint presently on file a comprehensible claim for which relief can be granted. The connections plaintiff is drawing from the various pieces of information presented are unintelligible in their present form. Therefore, defendants' motion to dismiss the amended complaint is granted for failure to state a claim upon which relief can be granted. This dismissal is without prejudice. If plaintiff intends to pursue her claims, she is strongly advised to consult an attorney before filing a new action with this court.

In conclusion, defendants' motion to dismiss plaintiff's amended complaint is granted without prejudice, and the clerk of the court is directed to dismiss this action in its entirety.

It is So Ordered.

> FN1. The vast majority of these appendices are letters written by plaintiff to Michael Bossert, Vice President of Finance and Administration, about problems with her colleagues and problems with student utilization of the services she offers. It is not clear how such letters are related to plaintiff's claim that defendant is retaliating against her as a result of the court-approved contract in 1988.

N.D.N.Y.,1992.
Jochnowitz v. Russell Sage College
Not Reported in F.Supp., 1992 WL 106813 (N.D.N.Y.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1992 WL 106813 (N.D.N.Y.)
(Cite as: 1992 WL 106813 (N.D.N.Y.))


END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Charles EDWARDS, Petitioner,
v.
Darwin LADLAIR,[FN1] Superintendent, Franklin
Correctional Facility, Respondent.

FN1. Darwin Ladlair, Superintendent, Franklin
Correctional Facility, substituted for Glenn S.
Goord, Commissioner, Department of
Correctional Services. *See* Order at Docket No.
3; Fed.R.Civ.P. 17(d).

No. 9:07-cv-00059-JKS.

Aug. 4, 2008.

Charles Edwards, Malone, NY, pro se.

Thomas B. Litsky, New York State Attorney General -
New York Office, New York, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., District Judge.

*1 Petitioner Charles Edwards, a state prisoner appearing
*pro se,* has petitioned for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. Petitioner is currently in the custody
of the New York Department of Correctional Services,
incarcerated at the Franklin Correctional Facility.

I. BACKGROUND/PRIOR PROCEEDINGS

In may 1994 Edwards was convicted, following jury trial,
in the Bronx County Supreme Court of three counts of
first-degree rape (N.Y. Pen. Law § 130.35(1)), three
counts of first-degree rape (N.Y. Pen. Law § 130.35(3)),
four counts of first-degree sodomy (N.Y. Pen. Law §
130.50(1)), four counts of first-degree sodomy (N.Y. Pen.
Law § 130.50(3)), one count of first-degree sexual abuse
(N.Y. Pen. Law § 130.65(1)), and one count of
first-degree sexual abuse (N.Y. Pen. Law § 130.65(3).
Edwards was also convicted upon a plea of guilty to bail
jumping in the first degree. Edwards was sentenced to 14
concurrent terms of eight and one-half to 17 years each for
the rape and sodomy charges, concurrent with two
concurrent terms of three to six years on the sexual abuse
charges. Edwards appealed his conviction of the Appellate
Division, First Department, which affirmed his conviction,
and the New York Court of Appeals denied leave to
appeal. *People v. Edwards,* 254 A.D.2d 136, 681
N.Y.S.2d 227 (N.Y.A.D.1998), *lv. denied,* 93 N.Y.2d 852,
688 N.Y.S.2d 499, 710 N.E.2d 1098 (N.Y.1999)
(Table).[FN2]

FN2. Edwards also challenged his conviction in
a federal habeas proceeding in the Southern
District of New York, which denied his petition.
*Edwards v. Mazzuca,* 2007 WL 2994449
(S.D.N.Y. October 15, 2007), *appeal pending.*

In January 2004, the Attica Time Allowance Committee
(TAC) recommended that none of Edwards' 5 years 8
months of good time credit be withheld. That
recommendation was affirmed by the Commissioner's
designee. Subsequently, after his transfer to the Gowanda
Correctional Facility, the Gowanda TAC notified Edwards
that a hearing would be held to determine whether good
time allowance should be withheld for his failure to
participate in the Sex Offender Counseling Program
("SOCP"). Edwards appeared before the Gowanda TAC
and, after according Edwards an opportunity to be heard,
found that he had, in fact, refused to participate in the
SOCP and recommended withholding all 5 years 8 months
of Edwards' available good time, subject to
reconsideration when he completed the SCOP. The
Gowanda Superintendent confirmed the TAC decision,
and on March 8, 2004, the decision was affirmed by the
Commissioner's designee.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 9:08-cv-01186-NAM-DEP   Document 23   Filed 02/26/10   Page 49 of 70

Page 2

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

On April 21, 2004, Edwards filed a petition under article 78, N.Y. Civil Practice Law and Rules, in the Albany County Supreme Court challenging the decision to withhold his good time allowance, which the Albany County Court dismissed. Edwards timely appealed to the Appellate Division, Third Department, which affirmed the dismissal on February 16, 2006, and the New York Court of Appeals denied leave to appeal on September 14, 2006, and reconsideration on December 21, 2006. *Matter of Edwards v. Goord,* 26 A.D.3d 659, 808 N.Y.S.2d 841 (N.Y.A.D.), *lv. denied,* 822 N.E.2d 1173 (N.Y.) (Table), *reargument denied,* 7 N.Y.3d 922, 827 N.Y.S.2d 691, 860 N.E.2d 993 (N.Y.2006) (Table).

Edwards timely filed his petition in this Court on January 8, 2007.

## II. STANDARD OF REVIEW

**\*2** Because Edwards filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (explaining this standard). In applying this standard, this Court reviews the last reasoned decision by the state court. *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000). State court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *Miranda v. Bennett,* 322 F.3d 171, 178 (2d Cir.2003). In that situation,

conclusions of law and mixed questions of fact and law are reviewed *de novo. DeBerry v. Portuondo,* 403 F.3d 57, 67 (2d Cir.2005). Where there is no reasoned decision of the state court addressing the ground or grounds raised by the Petitioner on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it. *See Spears v. Greiner,* 459 F.3d 200, 203-04 (2d Cir.2006).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). It is also presumed that the state court knew and correctly applied state law. *See Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

## III. GROUNDS RAISED/DEFENSES

Edwards states a single ground, to wit: that the rescission of his good time violated his due process and equal protection rights, specifically his First, Fifth, and Fourteenth Amendment rights. He seeks restoration of his 5 years and 8 months of good time credit and immediate release from prison. Edwards raises two grounds founded upon federal rights: (1) compelled participation in the SCOP violates his Fifth Amendment right against self incrimination; and (2) rescission of his previously credited good time violated due process.[FN3] Respondent concedes that the grounds raised were exhausted in Edwards's state court article 78 proceeding.

FN3. With respect to his First Amendment claim,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

Edwards does not address that matter nor does he articulate the basis upon which his First Amendment rights may have been violated in either his petition or his traverse. To the extent that Edwards raises claims based upon the misinterpretation or misapplication of state law, those issues are, as noted above, beyond the purview of this Court in a federal habeas proceeding. Accordingly, the Court does not address those claims.

### IV. DISCUSSION

**\*3** In rejecting Edwards's arguments, the Appellate Division held (808 N.Y.S.2d at 842):

It is well established that "[g]ood behavior allowances are in the nature of a privilege ... and no inmate has the right to demand or to require that any good behavior allowance be granted to him [or her]" (7 NYCRR 260.2). The determination that a good time allowance is discretionary in nature and, as long as it is made in accordance with the law, it will not be subject to judicial review (see Correction Law § 803[4]; Matter of Thomas v. Time Allowance Comm. at Arthur Kill Correctional Facility, 4 A.D.3d 637, 638, 771 N.Y.S.2d 739 [2004] ). Here, the record evidence demonstrates that petitioner, on more than one occasion, refused to participate in a recommended sex offender program. Such refusals provided a rational basis for the withholding of petitioner's good time allowance (see 7 NYCRR 260.3[b]; Matter of McPherson v. Goord, 17 A.D.3d 750, 751, 793 N.Y.S.2d 230 [2005],lv. denied 5 N.Y.3d 709, 803 N.Y.S.2d 30, 836 N.E.2d 1153 [2005];Matter of Bolster v. Goord, 300 A.D.2d 711, 713, 752 N.Y.S.2d 403 [2002] ). Petitioner's remaining contentions, as set forth in his pro se brief, have been examined and found to be lacking in merit.

There is no constitutional or inherent right of a convicted person to be conditionally released on parole before expiration of a sentence. Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The Second Circuit has specifically held that New York's parole scheme does not create a liberty interest protected by the Due Process

Clause of the Fourteenth Amendment. See Barna v. Travis, 239 F.3d 169, 171 (2d Cir.2001); see also Davis v. Dennison, 219 Fed.Appx. 68, 70 (2d Cir.2007). Although the Second Circuit has not expressly reached the issue before this Court, the grant of good time credits, it appears to the Court that the rationale underpinning Barna is equally applicable to that subject. The statutory basis for and regulations implementing the good time scheme are substantially similar to those of the parole scheme.

N.Y. Corrections Law § 803 "Good behavior allowances against determinate and indeterminate sentences," provides (emphasis added):

1. (a) Every person confined in an institution of the department or a facility in the department of mental hygiene serving an indeterminate or determinate sentence of imprisonment, except a person serving a sentence with a maximum term of life imprisonment, *may receive* time allowance against the term or maximum term of his sentence imposed by the court. Such allowances *may be granted* for good behavior and efficient and willing performance of duties assigned or progress and *achievement in an assigned treatment program,* and *may be withheld,* forfeited or canceled in whole or in part for bad behavior, violation of institutional rules or *failure to perform properly in the duties or program* assigned.

**\*4** (b) A person serving an indeterminate sentence of imprisonment *may receive* time allowance against the maximum term of his sentence not to exceed one-third of the maximum term imposed by the court.

Section 803(3) confers on the commissioner of correctional services the authority to promulgate rules and regulations for granting, withholding, forfeiture, cancellation, and restoration of good time, as well as establishing committees within each correctional facility. Section 803(4) provides:
No person shall have the right to demand or require the allowances authorized by this section. The decision of the commissioner of correctional services as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

The regulations promulgated by the commissioner parrot this provision: "Good behavior allowances are in the nature of a privilege to be earned by the inmate and no inmate has the right to demand or to require that any good behavior allowance be granted to him." 7 N.Y. Comp.Codes & Regs. § 260.2.

The commissioner's regulations also make clear that the grant of a good time allowance is contingent upon further compliance with the requirements for good time allowances. 7 N.Y. Comp.Codes & Regs. § 262.1(b) ("The grant of the good behavior allowance shall be contingent on the inmate's continued good behavior, efficient and willing performance of duties assigned, and progress and achievement in an assigned treatment program."). The regulations further provide for the reconsideration of the amount of good time to be granted for acts in disregard of the statutory criteria for good behavior allowances, *e.g.,* achievement in assigned treatment programs. 7 N.Y. Comp.Codes & Regs. § 263.2(b).

Like the parole provisions in *Barna,* granting or withholding of good time is a discretionary matter subject to the prisoner meeting and maintaining the requirements for eligibility. Thus, the inescapable conclusion is that, like the New York parole scheme, the wholly discretionary good time allowance scheme does not "create a legitimate expectancy" of obtaining an earlier release. *Barna,* 239 F.3d at 171.

Even if the Court were to reach the merits on Petitioner's due process claim, Petitioner would not prevail. The New York scheme provides for a review of the inmate's file, a personal interview by the allowance committee, and a statement of its reasons for denying good time credits.[FN4] This meets the requirements of due process. *See Greenholtz,* 442 U.S. at 15.

FN4.7 N.Y. Comp.Codes & Regs. §§ 261.3; 261.4.

Edwards argues that because he continues to maintain he

is innocent and his guilt has yet to be finally established, his participation in the SOCP would, because it requires that he discuss his criminal acts, result in his incriminating himself.[FN5] Edwards's Fifth Amendment claim fails for two reasons.[FN6] First, the Fifth Amendment's Self-Incrimination Clause is applicable to the states by reason of its incorporation into the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Because Edwards has no "liberty interest in [a good time allowance] ... the protections of the Due Process Clause are inapplicable." *Barna,* 239 F.3d at 171.

FN5. Edwards ignores the fact that he was convicted by a jury and his conviction upheld by the New York appellate courts. His only pending action challenging his conviction is his federal habeas petition now pending on appeal before the Second Circuit. See note 2, page 1.

FN6. The Appellate Division summarily denied his Fifth Amendment claim without opinion. Consequently, this Court must determine *de novo* on the record whether the denial was contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court.

**\*5** More importantly, however, this Court cannot say that the decision of the Appellate Division upholding denial of the Edwards's claims was contrary to, or an unreasonable application of, Federal law as established by the Supreme Court. 28 U.S.C. § 2254(d)(1). The Supreme Court, in a civil rights action brought under 42 U.S.C. § 1983, held in a plurality decision that withholding prison privileges for refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that encumbers the constitutional right not to incriminate oneself under the Fifth Amendment. *McKune v. Lile,* 536 U.S. 24, 35-47, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). The Court is not unmindful of the fact that in *McKune* the Supreme Court noted the Kansas program upheld in that case did not affect a prisoner's eligibility for good-time credits or parole. 536 U.S. at 38 (dictum). Clearly established law, as used in § 2254(d)(1), refers to the holdings, as opposed to the *dicta,* of the decisions of the Supreme Court as of the time of the relevant state-court

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

action. *Williams v. Taylor,* 519 U.S. 362, 412 (2000). The Court also notes that no decision of the Supreme Court provides a clear answer to the question of whether a state may withhold good time credits, or deny parole, based upon the refusal of a prisoner to participate in a sex offender treatment program on Fifth Amendment grounds.[FN7]

> FN7. The Court is also not unmindful of the unpublished decision in *Donhauser v. Goord,* 181 Fed.Appx. 11 (2d Cir.2006), a civil rights action under 42 U.S.C. § 1983, in which the Second Circuit remanded the case to the district court for clarification, apparently agreeing, *sub silentio,* that the allegation DOCS automatically denied good time credits as a direct result of a prisoner's refusal to participate in the sex offenders' counseling program gave rise to a viable claim under the Fifth Amendment. This does not, however, change the analysis in this case-in a § 2254 action, the Court is concerned with the law as established by the Supreme Court, not the Court of Appeals for the Second Circuit. This Court is, however, bound by decisions of the Second Circuit as to whether the answer to a particular issue has been clearly established by the Supreme Court. That is not present in this case.

What *McKune* clearly held is that withholding of privileges from prisoners, whether automatic or discretionary, for a failure to discuss his self-incriminating criminal history in sex offender treatment programs, whether such programs are voluntary or compulsory, does not, *ipso facto,* constitute compulsory self-incrimination within the scope of the Fifth Amendment's self-incrimination proscription. The test, as articulated in *McKune,* depends upon the severity of the consequences of the choice made by the prisoner not to participate and discuss his crimes. 536 U.S. at 44-45 (plurality), 48-50 (O'Connor, J. concurring). Unfortunately, the Supreme Court has not provided a bright-line of demarcation above which the severity of the consequences constitutes compulsion.

The Supreme Court has upheld against Fifth Amendment compulsory self-incrimination claims the imposition of

sanctions or penalties for a failure to testify in several instances where the adverse consequence of making that choice was much greater than that imposed on Edwards in this case. *Ohio Adult Parole Authority v. Woodward,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (allowing adverse inferences to be drawn from a silence of a death-row inmate in the context of a clemency hearing); *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (permitting adverse inferences to be drawn from silence at a prison disciplinary hearing); *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (parolee's admission of guilt of rape and murder to a probation officer where a condition of parole required him to be truthful with the probation officer); *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) (use of statements made to mitigate responsibility and avoid the death penalty against him as evidence of guilt); *see also Brady v. Maryland,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (admission of guilt as part of a plea bargain).

**\*6** In two recent decisions the Supreme Court has expressly indicated that the phrase "clearly established" is to be narrowly, not broadly, applied. *Wright v. Van Patten,* 552 U.S. ----, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008); *Carey v. Musladin,* 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006). "Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten,* 552 U.S. at ----, 128 S.Ct. at 747, quoting from *Musladin,* 549 U.S. at ----, 127 S.Ct. at 654 (internal quotation marks and alterations omitted). Here, given the legitimate penological objective of the SCOP (rehabilitation), the fact that the right to a good time allowance is a discretionary privilege, the degree of severity of the sanction as measured against existing Supreme Court precedent as to the upper limit, and the lack of any controlling precedent on point, this Court cannot say that the no reasonable jurist could find that there was no compulsion in this case. In the case before this Court, recognizing that the decision of the Appellate Division is not contrary to any law clearly established by the Supreme Court,[FN8] collateral relief in the form of a habeas writ is unjustified. *See id.*

> FN8. As noted in *McKune,* no single case exists where the Supreme Court has held that the denial

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

of a privilege to a prisoner for refusal to participate in a rehabilitation program amounts to unconstitutional compulsion. 536 U.S. at 40.

Edwards is not entitled to relief on the ground that participation in the SCOP compelled him to be a witness against himself in violation of the Fifth Amendment.

V. CONCLUSION AND ORDER

Petitioner is not entitled to relief on any of the grounds raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED.**

The Court finds that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. 28 U.S.C. § 2253(c); *Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).* Accordingly,

**IT IS FURTHER ORDERED THAT,** the Court will grant a Certificate of Appealability on the issues:

1. Whether the New York good time allowance scheme creates a sufficient liberty interest to invoke the protection of the Due Process Clause of the Fourteenth Amendment; and

2. Whether participation in the sex offender counseling program and its application in the process of granting good time credits constitutes sufficient compulsion to encumber the constitutional right not to incriminate oneself under the Fifth Amendment under clearly established Federal law as determined by the Supreme Court.

N.D.N.Y.,2008.
Edwards v. Ladlair
Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 292749 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 292749 (C.A.2 (N.Y.)))

Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Charles EDWARDS, Petitioner-Appellant,
v.
Glen S. GOORD, Commissioner, Respondent,
Superintendent, Franklin Correctional Facility,
Respondent-Appellee.
No. 08-4107-pr.

Jan. 26, 2010.

Appeal from the United States District Court for the Northern District of New York (Singleton, J.).
Vivian Shevitz, South Salem, NY, for Petitioner-Appellant.

Thomas B. Litsky, Assistant Attorney General (Barbara D. Underwood, Solicitor General, Roseann B. MacKechnie, Deputy Solicitor General for Criminal Matters, of counsel), for Andrew M. Cuomo, Attorney General of the State of New York, New York, NY, for Respondent-Appellee.

Present WILFRED FEINBERG, ROBERT A. KATZMANN, Circuit Judges, and T.S. ELLIS, III, District Judge.[FN*]

FN* The Honorable T.S. Ellis, III, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

SUMMARY ORDER

*1 ON CONSIDERATION WHEREOF, it is hereby ORDERED, ADJUDGED, and DECREED that the judgment of the district court entered August 4, 2008, is AFFIRMED.

Petitioner-Appellant Charles Edwards appeals from a judgment of the United States District Court for the Northern District of New York (Singleton, J.), entered August 4, 2008, denying his petition for habeas corpus relief. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

We review a district court's decision to grant or deny habeas corpus relief de novo, and we review the district court's findings of fact for clear error. Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir.2005). Because Edwards is "in custody pursuant to the judgment of a State court," 28 U.S.C. § 2254(a), and because both of his claims of constitutional violations were adjudicated on the merits in a state court, id. § 2254(d), his application for the writ shall not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," id. § 2254(d)(1).

Petitioner first argues that his Fourteenth Amendment right to due process of law was violated when the Time Allowance Committee ("TAC") at the Gowanda Correctional Facility recommended that he not receive any good time credits and the designee of the Commissioner of the New York State Department of Correctional Services ("DOCS") affirmed this recommendation, after the Commissioner's designee had previously affirmed the recommendation of the TAC at the Attica Correctional Facility that he receive five years and eight months of good time credits.

"In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Perry v. McDonald, 280 F.3d 159, 173 (2d Cir.2001) (alteration and internal quotation marks omitted). Prisoners do not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 292749 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 292749 (C.A.2 (N.Y.)))

have a protected liberty interest in parole where the relevant statutory scheme endows prison authorities with discretion over the decision whether to grant it. *See Greenholtz v. Inmates of the Neb. Penal and Corr. Complex,* 442 U.S. 1, 9-11 (1979); *Barna v. Travis,* 239 F.3d 169, 170-71 (2d Cir.2001). On the other hand, the Supreme Court has held that a prisoner has a protected liberty interest in an award of good time credits when the applicable state statutory scheme provides that credits, once awarded, may only be revoked under specific circumstances. *Wolff v. McDonnell,* 418 U.S. 539, 556-58 (1974); *see also Sandin v. Conner,* 515 U.S. 472, 483-84 (1995) (reaffirming the correctness of *Wolff's* holding). In such an instance, the prisoner is entitled to a hearing that meets certain minimum due process requirements before the good time credits may be revoked. *See Wolff,* 418 U.S. at 557-58, 563-72.

**\*2** Edwards concedes that the initial decision as to the award of good time credits to him was discretionary and that he had no entitlement to receive any such credits. He argues, however, that once the commissioner's designee, in accordance with the applicable regulations, *see* N.Y. Comp.Codes R. & Regs. tit. 7, § 262. 1, adopted the recommendation of the Attica TAC that he be granted five years and eight months of good time credits, this decision became "final" under N.Y. Corrections Law § 803(4) and he thereby acquired a protected liberty interest. He asserts that his due process rights were then violated when the Gowanda TAC and, ultimately, the Commissioner made the decision to revoke his award.

We are mindful that under *Wolff,* the arbitrary revocation of previously awarded good time credits runs afoul of the Fourteenth Amendment's guarantee of due process. *See* 418 U.S. at 557. But here, the discretionary award of good time credits to Edwards was reconsidered in accordance with the procedures generally set forth in N.Y. Comp.Codes R. & Regs tit. 7, §§ 261.3-261.4. Edwards received a second hearing before the Commissioner, through his designee, ultimately adopted the Gowanda TAC's recommendation that Edwards' refusal to participate in sex offender counseling made him an inappropriate candidate for such an award. Edwards does not contend that this second hearing was procedurally deficient under *Wolff* or any other applicable precedent. Moreover, Edwards does not dispute that his refusal to

participate in sex offender counseling was a relevant consideration under the applicable statute. *See* N.Y. Corrections Law § 803(1)(a) (providing that good time credits "may be granted for ... progress and achievement in an assigned treatment program, and may be withheld, forfeited or canceled in whole or in part for ... failure to perform properly in the ... program assigned").

Petitioner's argument focuses largely on N.Y. Corrections Law § 803(4), which provides that

No person shall have the right to demand or require the allowances authorized by this section. The decision of the commissioner of correctional services as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law.

According to Edwards, this provision rendered his initial award of good time credits final and unalterable, except in the event of some subsequent misconduct on his part, *see* N.Y. Comp.Codes R. & Regs tit. 7, § 263.2(b). We cannot agree. The overall import of § 803(4) is to reinforce the discretionary nature of the commissioner's decision regarding good time credits, not to curtail the commissioner's authority. Under petitioner's reading of the applicable statute and regulations, if it came to light that an award of good time credits was based on a factual error and a prisoner who posed a danger to the community was mistakenly set to be released early, the Commissioner would be powerless to take any action. We do not think that the statute can reasonably be interpreted to so stringently circumscribe the Commissioner's authority.

**\*3** Petitioner argues, in the alternative, that his Fifth Amendment privilege against compelled self-incrimination was violated when DOCS conditioned the award of good time credits on his willingness to participate in a sex offender counseling program, and that program required participants to admit responsibility for their crimes of conviction and any other uncharged sex offenses they have committed without offering them immunity from prosecution. [FN1] This argument fails, however; habeas relief may only be granted if the state court's decision on the merits was "contrary to, or involved an unreasonable

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 292749 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 292749 (C.A.2 (N.Y.)))

application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The relevant decision of the Supreme Court, *McKune v. Lile,* 536 U.S. 24 (2002), does not clearly establish that the Fifth Amendment's privilege against compelled self-incrimination was violated under the circumstances presented here.

> FN1. In 2001, inmates in the New York State prison system filed a class action lawsuit in the Northern District of New York, bringing a Fifth Amendment challenge to the DOCS's practice of denying good time credits to prisoners who refuse to admit guilt to criminal sexual conduct as part of their sex offender counseling. In October 2008, the parties to that lawsuit entered into a court-approved settlement pursuant to which the DOCS has agreed to give prisoners immunity with regard to any information disclosed in the course of sex offender counseling. The settlement agreement remains in effect through October 3, 2010. Petitioner was not a party to this lawsuit, and neither he nor respondent has argued that the existence of this lawsuit affects our analysis of petitioner's Fifth Amendment claim.

In *McKune,* the Supreme Court considered a sex offender treatment program in Kansas state prisons under which participants were required to admit responsibility for their crime of conviction and to complete a "sexual history form" detailing all prior sexual activities, including those that would constitute uncharged criminal offenses. *Id.* at 30. No immunity from future criminal prosecution was offered to participants. *Id.* Prisoners who refused to participate suffered a reduction in their privileges, including restrictions on their visitation rights, work opportunities, canteen expenditures, access to a personal television, and transfer to a maximum-security unit. *Id.* at 30-31. Five justices found that the program did not violate prisoners' Fifth Amendment privilege against self-incrimination, but there was no majority opinion setting forth the appropriate analysis or rule. A plurality drew on the reasoning of *Sandin,* which defines the protected liberty interests of prisoners, for due process analysis, as "freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life." 515 U.S. at 484. The *McKune* plurality found that a sex offender counseling program such as the one adopted in Kansas prisons "does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating" fall short of constituting "atypical and significant hardships" under *Sandin's* definition. *McKune,* 536 U.S. at 37-38. Justice O'Connor, concurring, rejected the plurality's reliance on the *Sandin* due process standard, but agreed that the particular facts of *McKune* did not amount to compulsion under existing Fifth Amendment caselaw. *Id.* at 53-54.

All that can be said of *McKune,* then, is that a majority of the justices agreed that the Fifth Amendment privilege against compelled self-incrimination was not violated when prisoners faced less restrictive sanctions than Edwards faced here as a consequence of refusing to participate in sex offender counseling. While the plurality did note, in reaching its conclusion, that "respondent's decision not to participate in the Kansas [sex offender treatment program] did not ... affect his eligibility for good-time credits or parole," *id.* at 38, the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of th[e] Court's decisions at the time of the relevant state-court decision," *Williams v. Taylor,* 529 U.S. 362, 412 (2000). Accordingly, we cannot conclude, on the basis of *McKune,* that the state court's determination that Edwards' constitutional rights were not violated by the DOCS program was contrary to clearly established Federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

**\*4** We have considered Edwards' other arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

C.A.2 (N.Y.),2010.
Edwards v. Goord
Slip Copy, 2010 WL 292749 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

CNYPC, and that this compelled participation violates his "right to believe or not as my conscience dictates." *Id.* at 3, 5. *See, e.g., Warner v. Orange County Dept. of Probation,* 115 F.3d 1068, 1075 (2d Cir.1997) (holding that because the plaintiff was sent to Alcoholics Anonymous as a condition of his probation, without offering a choice of other providers, he was "plainly" coerced in violation of the Establishment Clause); *Alexander,* 118 F.Supp.2d at 301 (prisoner ordered to attend Alcohol and Substance Abuse Treatment Program was "coerced" for purposes of First Amendment).

Defendants' motion to dismiss plaintiff's First Amendment claim is denied. Accordingly, the Court will address plaintiff's motion for preliminary injunctive relief.

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district court's denial of inmate's request for preliminary injunction). Where a movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief sought, the requested injunction is properly characterized as mandatory rather than prohibitory. A party seeking a mandatory injunction must make a "clear" or "substantial" showing of the likelihood of success, as well as irreparable harm should the injunction not be granted. *Jolly v. Coughlin,* 76 F.3d 468, 473-74 (2d Cir.1996).

**\*4** Plaintiff asks that this Court issue a preliminary injunction prohibiting defendants from mandating participation in faith-based SOTP programs. Dkt. No. 3-2. The Court treats plaintiff's motion as seeking mandatory rather than prohibitory relief. Accordingly, plaintiff must make a clear or substantial showing of the likelihood of success on the merits of his claims.

Where a deprivation of constitutional rights is alleged, specific proof of irreparable injury is not required. *See e.g., Mitchell v.. Cuomo,* 748, F.2d 804, 806 (2d

Cir.1984). For purposes of this motion, defendants do not contest plaintiff's assertion that he will suffer irreparable harm if the requested relief is not granted. *See* Dkt. No. 8-2 at 6. *See McChesney v. Hogan,* No. 9:08-CV-1186, Report-Recommendation, 2009 WL 607398, at *3 (N.D.N.Y. Dec. 23, 2008), *adopted,* 2009 WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009) (Mordue, C.J.).

A party seeking injunctive relief must also demonstrate a likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief. *Covino,* 967 F.2d at 77.

While the Court has found that plaintiff's allegations are sufficient to withstand defendants' Rule 12(b)(6) motion to dismiss, the present record does not contain evidence sufficient to warrant the issuance of injunctive relief. The record before the Court consists only of plaintiff's description of these programs and his claim that defendants are "proselytizing Christianity" and mandating his participation in faith-based programs in contravention of his avowed atheism. Plaintiff has not presented the Court with program materials or other evidence demonstrating a clear or substantial likelihood of success on the merits of his claim that SOTP programs such as Dialectic Behavior Therapy, "The Good Lives Model" and various Hazeldon programs are, in fact, religious in nature in First Amendment terms. *Compare Warner,* 115 F.3d at 1075 (finding a "Twelve Steps" program which "placed a heavy emphasis on spirituality and prayer" and instructed belief in "a Power greater than ourselves" was an intensely religious event) with *Boyd v. Coughlin,* 914 F.Supp. 828, 833 (N.D.N.Y.1996) (McAvoy, J.) ("This court is unaware of a controlling decision that equates spirituality with religion, such that any reference to spirituality in ... [a] treatment program ... runs afoul of the First Amendment."). *See McChesney,* 2009 WL 607398, at *4. Plaintiff has also failed to support his motion with evidence that he was coerced into participating in the alleged religious exercises or rituals by virtue of his enrollment in the SOTP, and that no secular alternatives were made available to patients raising religious objections to the content of the treatment programs. *See Warner,* 115 F.3d at 1075 (recognizing that consideration of plaintiff's First Amendment claim "would be altogether different" if he had been offered a reasonable choice of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

therapy providers).

**\*5** Accordingly, plaintiff's motion for preliminary injunctive relief is denied.

## IV. Fifth Amendment Claims

SOTP participants seeking to advance to Phase II-IV of the program are asked to consent to polygraph and PPG examinations. Dkt. No. 1 at 3.[FN8] The Advancement Contract signed by plaintiff in December, 2008 contains the following general disclaimer: "[t]he court, your attorney, the Attorney General's Office, and other relevant participants in your commitment process have access to the information you reveal regarding your sexual offending behaviors and may use that information during the civil management process." Dkt. No. 3-3 at 7.[FN9] The section of the Advancement Contract specifically describing the required polygraph examinations includes the following statement: "The courts may choose to use any information gathered from these examinations." *Id.* at 8.[FN10] The Advancement Contract advises SOTP participants that a refusal to undergo the requested examinations "may slow or prevent advancement in SOTP phases of treatment." *Id.*

FN8. See note 5 *infra*.

FN9. Plaintiff references these documents as exhibits (C) and (D) to the complaint. Although the complaint as filed does not include these exhibits, the materials (as well as the documents identified as exhibits A and B), were filed as exhibits in support of plaintiff's motion for injunctive relief. Both submissions were filed on the same day.

FN10. A previous version of the Advancement Contract advised that polygraph examinations "are not designed to be incriminating or to be used in court." See Dkt. No. 3-3 at 5.

The Fifth Amendment's privilege against self-incrimination, which applies to the states via the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege

not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

Minnesota v. Murphy, 465 U.S. 420, 426 (1984) (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)). The right not to answer potentially incriminating questions however, is not absolute. Rather, "[t]he prohibition against compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings." Andover Data Services, a Div. of Players Computer, Inc. v. Statistical Tabulating Corp. 876 F.2d 1080, 1082 (2d Cir.1989). Thus, "[i]t is ... black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify 'if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness.' " Pillsbury Co. v. Conboy, 459 U.S. 248, 273 (1983) (Blackmun, J., concurring) (quoting Brown v. Walker, 161 U.S. 591, 597 (1896)).

Outside of the prison context, the Supreme Court has "described compulsion in relatively broad terms." Ainsworth v. Risley, 244 F.3d 209, 213 (1st Cir.2001), vacated on other grounds, 536 U.S. 953 (2002). The Court has held that "certain types of penalties are capable of coercing incriminating testimony," including: termination of employment, the loss of a professional license, ineligibility to receive government contracts, and the loss of the right to participate in political associations and to hold public office. McKune v. Lile, 536 U.S. 24, 49-50 (2002) (O'Connor, J., concurring in the judgment) (citing cases). The Supreme Court has defined "compulsion" as anything that makes the exercise of the right "costly." Spevack v. Klein, 385 U.S. 511, 515 (1967). See Lefkowitz v. Cunningham, 431 U.S. 801, 808 (1977) (rejecting "the notion that citizens may be forced to incriminate themselves because it serves a governmental need.").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

**\*6** Writing for a plurality of the Court in *McKune,* Justice Kennedy concluded that the setting in which the compulsion arises is an integral part of the constitutional analysis. *Id., 536 U.S. at 36* ("The fact that these consequences are imposed on prisoners, rather than ordinary citizens, moreover, is important in weighing respondent's constitutional claim."). Noting that "[a] broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction," *id.,* Justice Kennedy concluded that the "atypical and significant hardship" analysis articulated in *Sandin v. Connor, 515 U.S. 472 (1995)* "provides a reasonable means of assessing whether the response of prison administrators to correctional and rehabilitative necessities are so out of the ordinary that one could sensibly say they rise to the level of unconstitutional compulsion." *McKune, 536 U.S. at 41.* Concurring with the judgment reached by the *McKune* plurality, that withholding certain privileges upon an inmate's refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that encumbers the constitutional right not to incriminate oneself, Justice O'Connor wrote separately to express her opinion that the Fifth Amendment compulsion standard is broader that *Sandin's* "atypical and significant hardship" standard. *Id., 536 U.S. at 48* (O'Connor, J., concurring).[FN11]

> **FN11.** The inmate plaintiff in *McKune,* complained that he faced transfer to a less-desirable maximum security prison, and that he also faced the loss of his personal television set, less access to prison organizations and the gym area, a reduction in certain pay opportunities and restricted visitation rights. *McKune, 536 U.S. at 39.* Justice Kennedy, writing for a plurality, emphasized that the decision not to participate in the Kansas Sexual Abuse Treatment Program "did not extend [the prisoner's] term of incarceration" nor did it "affect his eligibility for good-time credits or parole." *Id., 536 U.S. at 38.*

In this case, plaintiff, a civil detainee faced with prolonged civil detention if he refuses to submit to polygraph and PPG examinations, has adequately alleged that he faces "compulsion" that is constitutionally significant even under the *Sandin* analysis utilized by the *McKune* plurality.

Notwithstanding the foregoing, however, the Court finds that plaintiff has failed to state a Fifth Amendment claim because neither polygraph nor PPG examinations violate the Fifth Amendment privilege against self-incrimination. The Second Circuit has held that requiring the use of a polygraph examination for a convicted sex offender as a condition of supervised release does not violate the privilege against self-incrimination because polygraph evidence is generally inadmissible, and the individual would be free to challenge that evidence should it be used against him in a future proceeding. *United States v. Johnson, 446 F.3d 272, 278-80 (2d Cir.2006); United States v. Santiago, No. 03 Cr. 664, 2008 WL 1959548, at \*1 (S.D.N.Y. May 5, 2008); see also United States v. Dotson, 324 F.3d 256, 261 (4th Cir.2003)* (polygraph test, "inadmissible in nearly every circumstance at trial," may be required as a condition of supervised release); *United States v. Zinn, 321 F.3d 1084, 1090-92 (11th Cir.2003)* (requiring polygraph testing as a condition of supervised release generally does not violate the Fifth Amendment). *Compare United States v. Weber, 451 F.3d 552, 568 n. 17 (9th Cir.2006)* (defendant subject to polygraph testing as requirement of supervised release retains Fifth Amendment rights "unless granted use-andderivative-use immunity").

**\*7** The Court also find that results of PPG examinations do not implicate plaintiff's Fifth Amendment right against self-incrimination because the procedure itself is not testimonial but, rather, is an assessment of an individual's physical reactions to various stimuli. *See McChesney, 2009 WL 607398, at \*5;Walrath v. United States, 830 F.Supp. 444, 446 (N.D.Ill.1993).* Moreover, courts asked to consider the admissibility of PPG examinations have uniformly refused to do so, finding that PPG results fail to meet scientific validity prong for admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-90 (1990)). See Doe ex. rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1266 (9th Cir.2000)* ("courts are uniform in their assertion that the results of penile plethysmographs are inadmissible as evidence because there are no accepted standards for this test in the scientific community."); *United States v. Powers, 59 F.3d 1460, 1470-71 n. 13 (4th Cir.1995)* (appellant "has not provided, and we have not found, any decisions acknowledging the validity of the use of penile

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

plethysmography other than in the treatment and
monitoring of sex offenders.").

Based upon the foregoing, the Court finds that the
allegations of the complaint, as drafted, do not state a
claim upon which relief may be granted for the violation
of plaintiff's Fifth Amendment right against
self-incrimination stemming from polygraph and/or PPG
examinations conducted as part of the SOTP. This aspect
of defendants' motion to dismiss is granted.[FN12]

> **FN12.** In light of this ruling, the Court need not
> address plaintiff's motion for injunctive relief.
> Defendants' claim that they are entitled to
> qualified immunity from damages on this claim
> is also moot.

**V. Qualified Immunity**

Defendants raise the affirmative defense of qualified
immunity. Dkt. No. 8-2 at 11-12. "Qualified immunity is
an affirmative defense that shields government officials
'from liability for civil damages insofar as their conduct
does not violate clearly established statutory or
constitutional rights of which a reasonable person would
have known.' " Stephenson v. Doe, 332 F.3d 68, 76 (2d
Cir.2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50
(2d Cir.1997)).

The Second Circuit has recognized that the availability of
qualified immunity may "turn[ ] on factual questions that
cannot be resolved at [the motion to dismiss] stage of the
proceedings." Taylor v. Vermont Dept. of Educ., 313 F.3d
768, 793 (2d Cir.2002).[FN13] Thus, where the "objective
reasonableness" of defendants' actions depends at least in
part on what information they had regarding the substance
of plaintiff's complaints, an adjudication as to the
applicability of the qualified immunity affirmative defense
on the basis of the pleadings alone would be premature.

> **FN13.** In Stephenson, the court advised that a
> "defendant should press a qualified immunity
> defense during pretrial proceedings so that such
> a claim can be disposed of by summary judgment

where possible, or factual disputes material to the
defense can be identified and presented to the
jury." Stephenson, 332 F.3d at 76.

Although a factual basis for affording qualified immunity
to defendants on plaintiff's First Amendment claims may
arise during the course of discovery, the Court cannot at
this early stage of the proceeding, accepting all of
plaintiff's allegations as true, conclude that defendants are
entitled to qualified immunity as a matter of law. See
Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246,
255 (2d Cir.2001); Bailey v. Pataki, 08 Civ. 8563, 2009
WL 2001178, at *6 (S.D.N.Y. Jul. 10.2009). Accordingly,
defendants' motion to dismiss plaintiff's First Amendment
claims for money damages based on qualified immunity is
denied, without prejudice to renew.

**VI. Conclusion**

*8 Defendants' motion to dismiss the complaint pursuant
to Rule 12(b)(6) for failure to state a claim upon which
relief may be granted is granted in part and denied in part.
The well-pleaded allegations of the complaint sufficiently
allege a violation of plaintiff's First Amendment rights
resulting from his required participation in faith-based
treatment programs. Plaintiff's motion for preliminary
injunctive relief is denied. Defendants' request for
dismissal of plaintiff's First Amendment claims for money
damages on qualified immunity grounds is denied, without
prejudice. Plaintiff's Fifth Amendment claims are
dismissed, without prejudice.

WHEREFORE, on the basis of the above, it is hereby

ORDERED, that defendants' motion to dismiss the
complaint pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure is **granted in part and denied in part**
as set forth above, and it is further

ORDERED, that plaintiff's motion for preliminary
injunctive relief is **denied,** and it is further

ORDERED, that defendants file an answer to complaint

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

**no later than October 31, 2009,** and it is further

ORDERED, that the Clerk serve a copy of this
Memorandum-Decision and Order on the parties.

IT IS SO ORDERED.

N.D.N.Y.,2009.
Decker v. Hogan
Slip Copy, 2009 WL 3165830 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 1959548 (S.D.N.Y.)
(Cite as: 2008 WL 1959548 (S.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
UNITED STATES of America, Plaintiff,
v.
William SANTIAGO, Defendant.
**No. 03 Cr. 664(AKH).**

May 5, 2008.

***ORDER***

ALVIN K. HELLERSTEIN, District Judge.

*\*1* Defendant William Santiago pleaded guilty to two counts of receiving and distributing materials that contained child pornography, 18 U.S.C. § 2252A(a)(2)(B), and one count of possessing materials that contained child pornography, 18 U.S.C. § 2252A(a)(5)(B). Defendant was initially sentenced to a term of imprisonment of 78 months, a term I later reduced to 63 months pursuant to *United States v. Booker,* 543 U.S. 220 (2005) and *United States v. Crosby,* 397 F.3d 103 (2d. Cir.2005). As a condition of Defendant's supervised release, I required Defendant to participate in a sex offender and/or mental health treatment program, and required that Defendant abide by all terms of the treatment programs, including submission to polygraph testing. Defendant, who is completing his prison term at the Bronx Residential Re-entry Center, has submitted a letter to the Court seeking leave to file a habeas petition contesting the administering of a polygraph.

The requirement that Defendant submit to polygraph testing as part of his treatment was imposed at Defendant's initial sentencing on December 19, 2003. In imposing Defendant's sentence, I read the condition in open court, and the condition was also included in the presentence investigation report that was reviewed by

Defendant and his counsel. The time to oppose the imposition of the condition was at sentencing and, in any event, no later than his appeal. Having not done so, Defendant cannot now contest the imposition of the condition via habeas petition. *See United States v. Pipitone,* 67 F.3d 34, 38 (2d Cir.1995) (holding that a petitioner cannot raise an issue that could have been raised on direct appeal in a habeas petition absent a showing of cause and prejudice).

In any event, even if Defendant had challenged the polygraph testing condition on direct appeal, his challenge would have been unsuccessful. Special conditions for supervised release may be imposed pursuant to 18 U.S.C. § 3583(d) where the conditions are reasonably related to (1) the nature and circumstances of the offense and the characteristics of the defendant and (2) the purposes of sentencing, "including the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provided the defendant with needed training or treatment". *United States v. Johnson,* 446 F.3d 272, 277 (2d Cir.2006). In *United States v. Johnson,* the Second Circuit upheld the use of a polygraph examination for a convicted sex offender as a condition of supervised release pursuant to 18 U.S.C. § 3583(d) because of the nature of the offense and the fact that the defendant was a serial offender. The Second Circuit also held that requiring a defendant to submit to a polygraph examination does not violate the defendant's Fifth Amendment rights because polygraph evidence is inadmissible, and a defendant would be free to challenge the evidence should the evidence be used against him in a future proceeding.

*\*2* The Defendant in this case pled guilty to three counts involving child pornography. The numerous images found by FBI agents on the Defendant's computer were graphic, violent and involved in some cases very young children engaging in sexual activity against their will. While Defendant accepted more responsibility for his actions in October 2005 at his resentencing, causing me to reduce his imprisonment term, Defendant did not initially appear to understand the severity of his criminal activity. Defendant is clearly an individual in grave need of mental health treatment, and the polygraph

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1959548 (S.D.N.Y.)
(Cite as: 2008 WL 1959548 (S.D.N.Y.))

examination will be administered in connection with
that treatment. The condition is appropriate under 18
U.S.C. § 3583(d). Consequently, Defendant's request
for relief from this Court is denied.


SO ORDERED.


S.D.N.Y.,2008.
U.S. v. Santiago
Not Reported in F.Supp.2d, 2008 WL 1959548
(S.D.N.Y.)


END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Darwin J. FIFIELD, Sr., Plaintiff,
v.
Mrs. D. EATON, Defendant.
No. 07-CV-6521L.

Oct. 20, 2009.

**Background:** Inmate sued senior counselor at correctional facility under § 1983, claiming that during his incarceration there the counselor insisted that he incriminate himself as to uncharged criminal activity or else face the loss of parole opportunities and good time credit, in violation of his Fifth and Fourteenth Amendment rights. Counselor moved to dismiss.

**Holdings:** The District Court, David G. Larimer, J., held that:

(1) inmate had no liberty interest in parole or good time credit;

(2) inmate failed to state a claim under the Fifth Amendment Self-Incrimination Clause; and

(3) in any event, the counselor was entitled to qualified immunity.

Motion granted.

West Headnotes

**[1] Constitutional Law 92 ⚖ 4829**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)11 Imprisonment and Incidents Thereof
                92k4829 k. Reduction of Term; Good-Time Credits. Most Cited Cases

**Constitutional Law 92 ⚖ 4838**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)12 Other Particular Issues and Applications
                92k4838 k. Parole. Most Cited Cases

**Pardon and Parole 284 ⚖ 46**

284 Pardon and Parole
    284II Parole
        284k45 Authority or Duty to Grant Parole or Parole Consideration
            284k46 k. Parole as Right or Privilege. Most Cited Cases

**Prisons 310 ⚖ 245(4)**

310 Prisons
    310II Prisoners and Inmates
        310II(F) Duration of Confinement
            310k243 Good Conduct or Other Earned Credits Against Sentence
                310k245 Right to Credits; Eligibility and Entitlement
                    310k245(4) k. Participation in Treatment Programs. Most Cited Cases
Inmate had no liberty interest in parole or good time credit allegedly denied as a result of his termination from a sex offender treatment program, thus defeating his claim of a Due Process violation. U.S.C.A. Const.Amend. 14.

**[2] Constitutional Law 92 ⚖ 3873**

92 Constitutional Law

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

92XXVII Due Process
    92XXVII(B) Protections Provided and Deprivations Prohibited in General
      92k3868 Rights, Interests, Benefits, or Privileges Involved in General
      92k3873 k. Liberties and Liberty Interests. Most Cited Cases
Protected liberty interest may arise from the Due Process Clause itself, or from an expectation or interest created by state law or administrative regulations. U.S.C.A. Const.Amend. 14.

[3] Civil Rights 78 ☞ 1311

78 Civil Rights
    78III Federal Remedies in General
      78k1306 Availability, Adequacy, Exclusivity, and Exhaustion of Other Remedies
      78k1311 k. Criminal Law Enforcement; Prisons. Most Cited Cases
To the extent that an inmate claimed that he was barred from any already-earned good time credit as a result of his expulsion from a sex offender treatment program, § 1983 was not the proper vehicle to seek redress, but rather, a writ of habeas corpus was his sole recourse. 42 U.S.C.A. § 1983.

[4] Criminal Law 110 ☞ 393(1)

110 Criminal Law
    110XVII Evidence
      110XVII(I) Competency in General
      110k393 Compelling Self-Incrimination
      110k393(1) k. In General. Most Cited Cases
Inmate failed to state a claim against a counselor at a correctional facility under the Fifth Amendment Self-Incrimination Clause where the inmate conceded that he did not make any incriminating statements and did not allege that the counselor ever used, sought to use, or could have used any incriminating statement against him in a criminal proceeding. U.S.C.A. Const.Amend. 5.

[5] Civil Rights 78 ☞ 1376(7)

78 Civil Rights
    78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
      78k1376 Government Agencies and Officers
      78k1376(7) k. Prisons, Jails, and Their Officers; Parole and Probation Officers. Most Cited Cases
Law governing inmate's claim that a counselor violated his Fifth Amendment right against self-incrimination and his right to due process under the Fourteenth Amendment by insisting, as part of a sex offender treatment program, that he incriminate himself as to uncharged criminal activity was sufficiently unsettled to entitle the counselor to qualified immunity from liability in the inmate's § 1983 suit. U.S.C.A. Const.Amends. 5, 14; 42 U.S.C.A. § 1983.

[6] Civil Rights 78 ☞ 1376(2)

78 Civil Rights
    78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
      78k1376 Government Agencies and Officers
      78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases
Doctrine of qualified immunity shields government officials from liability for civil damages where their performance of their discretionary duties does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

[7] Officers and Public Employees 283 ☞ 119

283 Officers and Public Employees
    283III Rights, Powers, Duties, and Liabilities
      283k119 k. Actions by or Against Officers and Employees. Most Cited Cases
Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity.

[8] Civil Rights 78 ☞ 1376(1)

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and
Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(1) k. In General. Most Cited Cases

**Civil Rights 78** 🌐        1376(2)

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and
Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(2) k. Good Faith and
Reasonableness; Knowledge and Clarity of Law; Motive
and Intent, in General. Most Cited Cases
In determining whether qualified immunity applies, court
can initially consider whether the facts alleged show the
defendant's conduct violated a constitutional right, or
consider the second prong, whether the right was such that
a reasonable official would know of it.

**[9] Civil Rights 78** 🌐        1376(2)

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and
Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(2) k. Good Faith and
Reasonableness; Knowledge and Clarity of Law; Motive
and Intent, in General. Most Cited Cases
For purposes of a qualified immunity defense, if the
plaintiff establishes that a constitutional violation
occurred, the court may examine whether the right was
clearly established in light of the specific context of the
case, not as a broad general proposition.

**[10] Civil Rights 78** 🌐        1376(2)

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and

Probable Cause
    78k1376 Government Agencies and Officers
        78k1376(2) k. Good Faith and
Reasonableness; Knowledge and Clarity of Law; Motive
and Intent, in General. Most Cited Cases
For purposes of a qualified immunity defense, plaintiff
may show that a right is clearly established by: (1)
identifying analogous case law establishing it; or (2)
showing that the conduct in question was so egregious that
no reasonable person could have believed that it would not
violate clearly established rights.

**[11] Civil Rights 78** 🌐        1432

78 Civil Rights
    78III Federal Remedies in General
        78k1425 Questions of Law or Fact
            78k1432 k. Defenses; Immunity and Good
Faith. Most Cited Cases
For purposes of a qualified immunity defense, whether a
right was "clearly established" at the pertinent time is
generally a question of law, but whether an official would
have reasonably believed that his conduct did not violate
a clearly established right is a mixed question of law and
fact which requires a particularized focus on the salient
facts of the case.

**[12] Officers and Public Employees 283** 🌐        119

283 Officers and Public Employees
    283III Rights, Powers, Duties, and Liabilities
        283k119 k. Actions by or Against Officers and
Employees. Most Cited Cases
For purposes of a qualified immunity defense, where there
is no dispute as to the material facts, the question of
reasonableness may be appropriately determined by the
court.
Darwin J. Fifield, Sr., Malone, NY, pro se.

Thomas J. Kidera, New York State Attorney General's
Office, Rochester, NY, for Defendant.

*DECISION AND ORDER*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

DAVID G. LARIMER, District Judge.

**\*1** Plaintiff Darwin J. Fifield ("Fifield") brings this action against Deborah Eaton, a senior counselor at the Gowanda Correctional Facility ("Gowanda"). Fifield alleges that during his incarceration at Gowanda, the defendant insisted that Fifield incriminate himself as to uncharged criminal activity or else face the loss of parole opportunities and "good time" credit, in violation of his Fifth and Fourteenth Amendment rights and 42 U.S.C. § 1983. U.S. CONST. Amend. V, XIV.

The defendant now moves to dismiss Fifield's complaint pursuant to Fed. R. Civ. Proc. 12(c), on the grounds that plaintiff has failed to allege a violation of his Fifth Amendment rights, cannot demonstrate a liberty interest in good time credit not already earned, and in any event cannot overcome the defendant's affirmative defense of qualified immunity. (Dkt. # 21). For the reasons set forth below, the defendant's motion is granted, and the complaint is dismissed.

## DISCUSSION

### I. Motion to Dismiss

In deciding a motion for judgment on the pleadings pursuant Rule 12(c) of the Federal Rules of Civil Procedure, "[courts] apply the same standard as that applicable to a motion under Rule 12(b)(6). Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994), citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir.1987). Nonetheless, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See e.g., Ashcroft v. Dept. of Corrections, 2007 WL 1989265, 2007 U.S. Dist. LEXIS 49079 (W.D.N.Y.2007) (discussing and applying the Twombly standard).

## II. Factual Background

In 2004, Fifield pled guilty to rape in the third degree (N.Y. Penal Law § 130.25[2] ) and attempted use of a child in a sexual performance (N.Y. Penal Law §§ 110.00, 263.05); he was sentenced to an indeterminate term of imprisonment of two-and-one-third to seven years. (Dkt. # 16 at 1). Fifield was received into custody on March 23, 2004, and was subsequently transferred to Gowanda by the Department of Correctional Services, in order to participate in the facility's Sex Offender Treatment Program (the "Program"). Enrollment in the Program required Fifield to complete intake forms discussing the conduct that gave rise to his conviction. During the intake process, Fifield consistently disputed the victim's account of forcible rape, contending that the victim's participation in the underlying sexual activity was entirely voluntary and uncoerced, and that in any event, he had only pled guilty to statutory rape, the elements of which do not necessarily require the use of force. Id.

**\*2** As a result of Fifield's refusal to "admit" to the commission of forcible rape as described in his victim's statement to police, defendant and other correction counselors terminated Fifield's participation in the Program two days after it began, on December 12, 2006. Id. at 2. Defendant referred Fifield to the Sex Offender Review Committee ("Committee"), with the recommendation that Fifield be terminated from the Program, due to his continued assertions that the victim's statement was untrue. The Committee adopted the counselors' recommendation, and terminated Fifield from the Program. Fifield's subsequent appeals of the Review Committee's decision, and grievances against the defendant, were denied.

On or about March 13, 2007, Fifield appeared before the Parole Board and was denied discretionary release because of, inter alia, his failure to complete the Program. Id. at 3. Thereafter, while incarcerated at Wyoming Correctional Facility, Fifield was denied good time credit for the same reason. Id.

Fifield claims that the defendant, through the Program's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

policy requiring assumption of responsibility for sex offenses, violated his Fifth Amendment right against self-incrimination by requiring him to falsely state that he coerced or otherwise forced his sixteen-year-old victim to engage in sexual activities against her will, something which was not a necessary element of the crimes for which he was convicted, and which Fifield denies having done. He further claims that his termination from the Program has negatively impacted his potential release date by depriving him of the opportunity to gain parole or good time credit, in violation of his due process rights under the Fourteenth Amendment.

### III. Plaintiff's Fourteenth Amendment Claim

[1] Defendant urges that Fifield's Fourteenth Amendment claim should be dismissed, because Fifield has no liberty interest in the parole or good time credit he alleges he was denied as a result of his termination from the Program.

[2] The Fourteenth Amendment prohibits the government from depriving citizens of life, liberty or property without due process of law. See e.g., Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). A protected liberty interest may arise from the Due Process Clause itself, or from an expectation or interest created by state law or administrative regulations. Id., 545 U.S. 209 at 221-222, 125 S.Ct. 2384.

It is well-settled that an inmate has no constitutionally protected liberty interest in parole, or other conditional release from prison, prior to the expiration of a valid sentence. See Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); Barna v. Travis, 239 F.3d 169, 171 (2d Cir.2001). The Second Circuit has also determined that an inmate has no constitutional right to discretionary good time release, or to participation in prison programs which might expedite release. SeeN.Y. Correct. Law § 803 (outlining New York's discretionary good time credit program); Abed v. Armstrong, 209 F.3d 63, 67 (2d Cir.2000) (where good time credit is a discretionary matter, inmate has no liberty interest in the opportunity to earn good time credit); Johnson v. Baker, 108 F.3d 10, 11 (2d Cir.1997) (inmate who was removed from a Sex Offender Program and denied admission to a family

visitation program because he refused to admit to the conduct of which he was convicted has "no basis for [an] equal protection claim," even where his refusal was made in order to preserve his then-pending appeal). See also Lighthall v. Vadlamudi, 2006 WL 721568 at *14-*15, 2006 U.S. Dist. LEXIS 74734 at *45-*47 (N.D.N.Y.) (Report-Recommendation) (inmates have no protected liberty interest in merit time, or programs awarding good time credit), adopted, 2006 U.S. Dist. LEXIS 74737 (N.D.N.Y.2006). Accordingly, plaintiff's due process claim relating to lost opportunities to earn good time credits must be dismissed.

*3[3] The breadth of Fifield's good time credit allegations is unclear, but to the extent that Fifield claims that he was barred from any already-earned good time credit as a result of expulsion from the Program, "[Section] 1983 is not the proper vehicle ... to seek redress for [an] alleged good-time credit deprivation [and] a writ of habeas corpus [i]s a prisoner's sole recourse in challenging the procedures used to deny him good-time credits." Ebron v. Lantz, 2006 WL 18827 at *3, 2006 U.S. Dist. LEXIS 610 at *8-*9 (D.Conn.2006), citing Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

### IV. Plaintiff's Fifth Amendment Claim

[4] The Fifth Amendment Self-Incrimination Clause, applicable to the states pursuant to the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." Malloy v. Hogan, 378 U.S. 1, 2, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

For several reasons, Fifield's claim against Correction Counselor Eaton must be dismissed. First of all, Fifield concedes that he did not make any incriminating statements and does not allege that the defendant ever used, sought to use, or could have used any incriminating statement against him in a criminal proceeding. In this posture, Fifield has failed to sufficiently allege a violation of his rights under the Fifth Amendment. See Chavez v. Martinez, 538 U.S. 760, 766-767, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) ("mere coercion [to self-incriminate] does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

case").

## V. Qualified Immunity

[5] Even if Fifield's allegations did state valid Fifth or Fourteenth Amendment claims, I find that the law governing the constitutionality of sex offender programs like the one confronted here is not sufficiently clear or uniform for Fifield to prevail, because the unsettled nature of the governing law entitles the defendant to qualified immunity.

[6] The doctrine of qualified immunity shields government officials from liability for civil damages where their performance of their discretionary duties does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is a two-pronged analysis.

[7][8][9][10] Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *See Baker v. Gerould,* 598 F.Supp.2d 357, 366 (W.D.N.Y.2009). In determining whether qualified immunity applies, the Court can initially consider whether the facts alleged show the defendant's conduct violated a constitutional right, or consider the second prong, whether the right was such that a reasonable official would know of it. *Pearson v. Callahan,* --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (holding that although "the sequence set forth in *Saucier*[FN1] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts ... should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). If the plaintiff establishes that such a violation occurred, the court may examine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. 194 at 201, 121 S.Ct. 2151. A plaintiff may show that a right is "clearly established" by: (1) identifying analogous case law establishing it; or (2) showing that the conduct in question was so egregious that no reasonable person could have believed that it would not violate clearly established rights. *See Hope v. Pelzer,* 536

U.S. 730, 739 (2002); *United States v. Lanier,* 520 U.S. 259, 265, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

*4[11][12] Whether a right was "clearly established" at the pertinent time is generally a question of law. *See Crawford-El v. Britton,* 523 U.S. 574, 589, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow,* 457 U.S. 800 at 818, 102 S.Ct. 2727. However, whether a official would have reasonably believed that his conduct did not violate a clearly established right, is a mixed question of law and fact which requires a particularized focus on the salient facts of the case. *Kerman v. City of New York,* 374 F.3d 93, 109 (2d Cir.2004); *Lennon v. Miller,* 66 F.3d 416, 422 (2d Cir.1995). Where, as here, there is no dispute as to the material facts, the question of reasonableness may be appropriately determined by the Court. *See Kerman,* 374 F.3d at 109; *Lennon,* 66 F.3d at 421.

Upon initial examination of the legal issues presented, I note that the Second Circuit has suggested that participation in prison programs may be conditioned on an inmate's disclosure of criminal conduct, so long as denial of program participation is "imposed for failure to answer a relevant inquiry and not for refusal to give up a constitutional right." *Johnson,* 108 F.3d 10 at 11 (inmate who was removed from a Sex Offender Program and denied admission to a family visitation program because he refused to admit to the conduct of which he was convicted has no basis for Fifth or Fourteenth Amendment claims, even where his refusal was made in order to preserve his then-pending appeal). Nonetheless, the Circuit has explicitly declined to address whether a denial of good time credits based upon an inmate's refusal to disclose criminal conduct amounts to a constitutional violation. *See United States v. Jones,* 299 F.3d 103, 111 n. 2 (2d Cir.2002) ("the Supreme Court in *Lile* was unable to reach a conclusive decision 'on the question of what standard to apply when evaluating compulsion for the purposes of the Fifth Amendment privilege against self-incrimination in a prison setting' ... [w]e need not take any position on this specific question here, and we do not"), *citing McKune v. Lile,* 536 U.S. 24, 49-50, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002).

Furthermore, there is no clear consensus among other

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

federal courts concerning this issue. *See Fournier v. Corzine,* 2007 WL 2159584 at *16 n. 18, 2007 U.S. Dist. LEXIS 54110 at *48 n. 18 (D.N.J.2007) (collecting cases, and noting that "[t]he Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction, or, in connection with a rehabilitation program, uncharged sexual conduct which may be criminal"); *Martin v. Dowling,* 2006 WL 2711643 at *4 n. 4, 2006 U.S. Dist. LEXIS 67711 at *12 n. 4 (D.N.J.2006) (same); *Donhauser v. Goord,* 314 F.Supp.2d 119, 124, 129 n. 8 (N.D.N.Y.2004) (declining to "set forth the concise and definitive standard for adjudging Fifth Amendment compulsion challenges by prisoners" due to the fact that this issue is "an already confused area of jurisprudence," and noting that "the 'atypical and significant hardships' standard [articulated in *McKune v. Lile* ] was not adopted by a majority of the Supreme Court, and in fact has not been embraced at a noticeable level by any federal court").

**\*5** Therefore, upon examination of the second prong of the qualified immunity test, I find that a reasonable official would not necessarily have reasonably believed that the facts here amount to a constitutional violation. As the district court for the Northern District of New York noted in analyzing a sex offender treatment program conditioned on prisoners' disclosure of criminal conduct in exchange for the opportunity to earn good time credit, "[e]ven though a prisoner's right to be free from compelled self-incrimination has been long established ... the standard defining that right ... has not and is not ... Courts have not reached a consensus on the proper legal parameters of such right; [government officials] should not [be] expected to solve the riddle either." *Donhauser,* 314 F.Supp.2d 119 at 139. Thus, even assuming that the opportunity to participate in the Program and to earn parole and/or good time credits are constitutionally protected liberty interests, I find that an inmate's right to do so without being compelled to make potentially incriminating statements about the conduct for which he was convicted is by no means well-settled, and not a right with which the defendant should have been expected to be familiar.

*CONCLUSION*

For the foregoing reasons, I find that there are no material issues of fact, and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion to dismiss the complaint (Dkt. # 21) is granted, and the complaint is dismissed in its entirety, with prejudice. Plaintiff's outstanding motion for additional discovery (Dkt. # 45) is denied as moot.

IT IS SO ORDERED.

FN1.*Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

W.D.N.Y.,2009.
Fifield v. Eaton
--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.