U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUN 20 2012
AT____ O'CLOCK____
Lawrence K. Baerman, Clerk - Syracuse

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

DAVID MCCHESNEY

        Plaintiff,

        v.                              Civil Action No.
                                      9:08-CV-1186 (NAM/DEP)

MICHAEL F. HOGAN, Commissioner,
New York State Office of Mental Health, et al.,

        Defendants.

---

In Re

JEREMY ZIELINSKI,

        Proposed Intervenor.

---

**PROPOSED INTERVENOR'S REPLY BRIEF IN SUPPORT OF PUBLIC ACCESS TO JUDICIAL RECORDS**

JEREMY ZIELINSKI
Movant-Proposed Intervenor, Pro Se
P.O. Box 231
Hagaman, NY 12086

Dated: June 15, 2012

Proposed Intervenor Jeremy Zielinski, Pro Se, respectfully submits this reply brief in further support of his Motion to intervene and vacate this Court's December 5, 2011 Order sealing *Exhibits A through I* in support of defendants' motion for summary judgment, Dkt. Nos. 37, 38, currently maintained under seal at Dkt. No. 42.

## POINT I

### The Interest at Issue is Preventing Current and Anticipated Participants in the SOTP from Gaining Access to the Sealed Exhibits

"*Lugosch* notes that summary judgment is an adjudication, and an adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny. Thus, summary judgment documents should not remain under seal absent the most compelling reasons." *Allen v. City of New York*, 420 F. Supp.2d 295, 300-02 (S.D.N.Y. 2006) (citations and modification and quotation marks omitted). "In matters such as this one, where the documents subject to seal are used by the parties in moving for and opposing summary judgment, the presumption of access is substantial." *Def. Mem.* at 5-6. "Documents to which the public has a qualified right of access may be sealed only if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 6, quoting *Press Enter. Co. v. Super. Ct.*, 478 U.S. 1, 13-14 (1986).

The defendants' main concern with unsealing the record is that it could lead to residents of the Sex Offender Treatment Program gaining access to the exhibits. According to the defendants, residents having access would reduce the effectiveness of their involuntary treatment. "The primary purpose for requesting that the documents be submitted under seal is to

1

prevent *participants in the SOTP* from having advance access to program materials. Disclosure of this information *to SOTP residents* in any way, other than through the group itself, undermines the therapeutic objectives of the program." *Maxymillian Declar.* ¶¶ 9-10 (emphasis added). "To maximize the effectiveness of these programs, it is of paramount importance that precautions are taken to minimize the likelihood that program content, submitted by CNYPC-SOTP under seal in this matter, come [sic] into the possession *of SOTP residents* in advance of their actual participation in the programs." *Freeman Declar.* ¶ 10 (emphasis added). "Advance access to these materials by *SOTP residents or future SOTP residents* ... jeopardizes the effectiveness of the terapies, and prolongs the need for these individuals to remainin involuntary confinement. ... The effectiveness of these programs requires that access to program content by *persons entering the SOTP, and persons currently residing in the SOTP*, be denied outside the context of the actual group participation." *Def. Mem.* at 10-11 (emphasis added).

Whatever merit these arguments have, if any, they raise only an interest in preventing SOTP participants from having access to the exhibits.

### POINT II

### The Government May Not Prevent the Public from Learning How the SOTP Operates on the Theory that Discussing it Might Increase the Risk of Crime

The defendants argue that an eternal, complete seal of everything in support of their summary judgment motion must be entered based on their speculation that "[i]f the court record is public, then, in theory, any sex offender confined in an OMH secure treatment facility (STF), or contemplating transfer to an STF at the end of a term of incarceration, could request the records from the court, and the court would send them copies" and that "nothing would stop

2

someone in the community from reading the materials over the phone to a sex offender...." *Maxymillian Declar.* ¶¶ 10-12.[1] They go on to argue that this might "increas[e] the likelihood that persons released for re-admission into society have not actually learned to recognize, channel or control the mental abnormality which causes them to re-offend." *Id.* ¶ 19.

This paternalistic argument from speculation upon speculation amounts to "The public must be blindfolded for its own good." Preventing the public from learning in detail what the government is doing in a highly controversial program, and thereby preventing them from reviewing, discussing and criticizing the most important parts of the government's actions, flies in the face of everything the First Amendment stands for. The public cannot discuss or debate the merits and implementation of the SOTP without first receiving knowledge on how it actually operates, and it is "well established that the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 US 557, 564 (1969). It is also well established that the government "may not prohibit speech because it increases the chance an unlawful act will be committed 'at some indefinite future time.'" *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2003), quoting *Hess v. Indiana*, 414 U.S. 105, 108 (1973).

> Our precedents have focused "not only on the role of the First Amendment in fostering individual self-expression but also on its role in affording the public access to discussion, debate, and the dissemination of information and ideas." *First National Bank of Boston v. Bellotti*, 435 U. S. 765, 783 (1978). And we have recognized that "the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge." *Griswold v. Connecticut*, 381 U. S. 479, 482 (1965). In keeping with this principle, we have held that in a variety of contexts "the Constitution protects the right to receive information and ideas." *Stanley v. Georgia*, 394 U. S. 557, 564 (1969); see *Kleindienst v. Mandel*, 408 U. S. 753, 762-763 (1972) (citing cases). This right is an inherent corollary of the rights of free speech and press that are explicitly

---

[1] To the extent that the defendants seek the seal to prevent the public from discussing aspects of the program that unsealing will enable, the seal is an unlawful content-based prior restraint on the public, and thus "comes to this Court bearing a heavy presumption against its constitutional validity." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 225 (1990).

3

> guaranteed by the Constitution, in two senses. First, the right to receive ideas follows ineluctably from the sender's First Amendment right to send them: "The right of freedom of speech and press . . . embraces the right to distribute literature, and necessarily protects the right to receive it." *Martin v. Struthers*, 319 U. S. 141, 143 (1943) (citation omitted). "The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers."

*Lamont v. Postmaster General*, 381 U. S. 301, 308 (1965) (BRENNAN, J., concurring).

> The focus commanded by the First Amendment makes it appropriate to emphasize the fact that the underpinning of our holding today is not simply the interest in effective judicial administration; the First Amendment's concerns are much broader. The "common core purpose of assuring freedom of communication on matters relating to the functioning of government," *Richmond Newspapers, Inc.* v. *Virginia*, 448 U. S. 555, 575 (1980) (plurality opinion), that underlies the decision of cases of this kind provides protection to all members of the public "from abridgment of their rights of access to information about the operation of their government, including the Judicial Branch."

*Press Enter. Co. I*, 464 U.S. 501, 517 (1984) (STEVENS, J. concurring).

## POINT III

### Less-Secretive Alternatives that would Adequately Protect the Defendants' Interests without Trampling the Public's Right to Access Judicial Documents are Available

A party seeking to seal judicial documents must "demonstrat[e] that 'closure is *essential* to preserve higher values and is *narrowly tailored* to serve that interest.'" *Press Enter. Co. II*, 478 U.S. at 14. (emphasis added). "A statute [or Order] is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy. *City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U. S. 789, 808-810 (1984). A complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).

The defendants have no interest in preventing the public from learning how the SOTP

4

operates in practice, from discussing it, from evaluating the credibility and logic of the program materials it uses, or from criticizing it and its operators. Even assuming that the defendants have a legitimate interest in preventing *SOTP participants* from accessing the materials, and further assuming that the record being easily available to all on PACER or through the mail would allow SOTP participants to obtain them, permanently barring the entirety of *the public* from accessing them is neither "essential" nor "narrowly tailored" to that interest. There are far less secretive alternatives.

The court could, for example, order the record sealed but allow for in-person inspection, but not copying and removal, of the exhibits at the Clerk's office. All present CNYPC-SOTP participants and most if not all potential SOTP participants are confined (either in prison or a secure OMH facility), so they obviously could not appear in person to inspect the records. For a person unable to travel to the Clerk's office, the court could require a certification that the requester is not an SOTP participant or a showing of good cause. The court could require a certification that the records will not be knowingly provided to a present or expected SOTP participant; violation of which would be punishable with the court's contempt powers.

Of course, another alternative to shutting the public out of the debate is to recognize that official censorship and secrecy are anathema to our form of government, reject the government's arguments that it is bad for people to try to treat themselves without government help before they have to be involuntarily confined, *see Freeman Declar.* ¶¶ 13, 15, and order the record unsealed without qualification. That would certainly be less secretive and far better for public debate over the SOTP. At least one participant—Mr. McChesney—has already received and viewed the entirety of the program materials and can openly discuss them, so unsealing will do little if any

damage to the defendants.[2]

There are certainly other remedies available that this Court could craft, as well, but whatever remedy the court ultimately decides on, it cannot be an order that allows the government to operate an extraordinary and controversial program in complete secrecy, especially when that program is being challenged as violating our fundamental law.

### POINT IV

### Copyright Concerns are Not at Issue Here

The defendants argue without detail that unsealing the record would somehow violate copyright law. *Def. Mem.* at 13. Even assuming *arguendo* that one could violate copyright by retrieving a judicial document, a license is not needed to criticize and comment on copyrighted materials, even if a critic publishes them in their entirety in the process. "[E]very idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication. See *Feist*, 499 U.S., at 349-350. Second, the 'fair use' defense allows the public to use not only facts and ideas contained in a copyrighted work, but also expression itself.... [S]uch use by reproduction in copies ..., for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." *Eldred v. Ashcroft*, 537 U.S. 186, 220 (2003) (second ellipsis in original).

---

2   With respect to Mr. McChesney, Intervenor notes that this Court should be critical of and closely scrutinize the defendants' position that anyone who learns of program materials must be confined for a longer period of time. *Maxymillian Declar.* ¶ 18. For participants in the SOTP, the thinly-veiled threat in this position is that challenging the program will prolong an individual's confinement.

## CONCLUSION

The defendants have failed to show that they have an overriding interest in keeping the SOTP program materials secret from the public. Even if they have an interest in keeping them from SOTP participants, that does not justify a permanent, across-the-board seal that blinds the entire public from how the program operates and prevents it from supervising this Court in the exercise of its Article III powers. There are numerous less-secretive alternatives available, and for that reason the First Amendment and the common law require this Court grant Intervenor's motion and vacate its December 5, 2011 Order.

Respectfully submitted,

Dated: Hagaman, New York
June 15, 2012

JEREMY ZIELINSKI
Proposed Intervenor, Pro Se
P.O. Box 231
Hagaman, NY 12086

## CERTIFICATE OF SERVICE

I, JEREMY ZIELINSKI, hereby declare under penalty of perjury that I am the movant-proposed intervenor herein and that on June 15, 2012 I served a true and correct copy of the annexed reply brief in support of public access to judicial records upon the following parties by post-paid First Class USPS mail:

Adele Taylor Scott
Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224-0341

David McChesney (#25527-604)
Central New York Psychiatric Center
P.O. Box 300
Marcy, NY 13403

Executed on June 15, 2012 at Hagaman, NY.

_____
JEREMY ZIELINSKI
Movant-Proposed Intervenor, Pro Se
P.O. Box 231
Hagaman, NY 12086

1

JEREMY ZIELINSKI
P.O. Box 231
Hagaman, NY 12086

U.S. DISTRICT COURT
LAWRENCE K. BAERMAN, CLERK

JUN 2 0 2012

RECEIVED

Clerk of the US District Court
Northern District of New York
100 S. Clinton Street, P.O. Box 7367
Syracuse, NY 13261

Re:   *McChesney v. Hogan*
      NDNY Civ. Action No. 08-CV-1186 (NAM/DEP)                    June 15, 2012

Dear Clerk:

   Enclosed please find for filing in the above case my reply brief in support of my motion for limited intervention seeking to unseal all exhibits submitted in support of the defendants' second motion to dismiss (Dkt. No. 38), which are currently maintained under seal (Dkt. No. 42).

   Thank you for your attention to this matter.

                                                     Sincerely,

                                                     JEREMY ZIELINSKI

Enclosures

cc: file

1

U.S. POSTAGE PAID
ALBANY, NY 12207
JUN 18, 12
AMOUNT
$1.50
00039648-0

13261

From:
JEREMY ZIELINSKI
PO Box 231
Napanoch NY 12458

To: Clerk of the US District Court
Northern District of NY
100 S Clinton St, PO Box 7367
Syracuse NY 13261-7367

U.S. DISTRICT COURT
LAWRENCE K. BAERMAN, CLERK
JUN 20 2012
RECEIVED

ReadyPost
Utility Mailer